## WOODLEY et al. v. COTTLE COUNTY.

### No. 3844.

Court of Civil Appeals of Texas. Amarillo. June 15, 1932.

Rehearing Denied Sept. 7, 1932.

Williams & Bell, of Childress, Joe D. Bell, of Paducah, and Walter F. Schenck, of Lubbock, for appellants.

W. B. Combest, of Paducah, V. H. McClintock, of Henderson, and A. B. Martin, of Plainview, for appellee.

JACKSON, J.

Cottle county instituted this suit in the district court against the defendants J. W. Woodley, George W. Woodley, G. M. Yowell, J. L. Heim, G. H. Anderson, and S. M. Jolly, on three county depository bonds executed by the defendants as sureties for the Security National Bank of Paducah, the principal on said bonds and the depository of the funds of the county.

The defendants J. W. Woodley, George W. Woodley, J. L. Heim, and G. M. Yowell answered; but G. H. Anderson and S. M. Jolly defaulted.

A jury was impaneled, but at the conclusion of the evidence the court directed a verdict in favor of the plaintiff and against the defendants and judgment was rendered that the county have and recover of and from the defendants, jointly and severally, the sum of $290,576.93, with interest at 6 per cent. per annum from date, from which judgment this appeal is prosecuted.

The appellants do not challenge the sufficiency of the petition, and the only complaint made by appellee is that appellants' plea in abatement should not be considered because not filed in the due order of pleading.

The record discloses that after due advertisement, the commissioners' court, at a regular meeting, on February 9, 1931, accepted the proposal of the Security National Bank, selected it as a depository of the funds of the county, and required it to furnish a regular depository bond for $135,465.17; an additional bond for $275,000, to cover road bond money; and a school depository bond in the sum

of $96,000, to cover the school funds. That thereafter the bank, as principal, and the defendants as sureties, executed and delivered to the county the three bonds so required.

The bond for the sum of $135,465.17 was in due form and contains the following provision: "The conditions of the foregoing obligations are such that whereas the above bounden principal Security National Bank, Paducah, Texas, incorporated, was on the 9th day of February, A. D., 1931, duly and legally chosen by the Commissioners' Court of Cottle County, Texas, as county depository for said county for a period of two years, ending sixty (60) days after the time fixed by law for the next selection of a depository, upon its bidding and agreeing to pay to the County of Cottle interest on daily balances kept in said depository of said County of Cottle at the rate of two (2%) per cent per annum, said interest payable monthly.

"Now therefore, if the above bounden principal Security National Bank, Paducah, Texas, incorporated, shall faithfully do and perform all the duties and obligations devolving on it by law as the county depository of Cottle County, and shall, upon presentation pay checks drawn on it by the County Treasurer of Cottle County, Texas, shall faithfully keep and account for all funds belonging to the county which are deposited with it and all other funds deposited with it under the requirements of chapter 11, Acts of the Thirty-Fifth Legislature passed at its Regular Session, and shall pay the interest at the time and at the rate hereinabove stipulated; and shall at the expiration of the term for which it has been chosen turn over to its successors all the funds, property, and other things of value coming into its hands as such depository, then and in that event this obligation is to be and become null and void, otherwise to remain in full force and effect."

The bond for $96,000 had substantially the same provision, but was for the protection of the school funds.

The bond for $275,000, in addition to the foregoing, contains a stipulation as follows: "This bond is made in addition to the regular depository bond and is intended to be made for and to cover and protect the county on all road bonds, money and funds including escrow funds of said county."

On October 30, 1931, at a special meeting of the board of directors of the bank, a resolution was introduced and adopted providing, in effect, that on account of the depleted cash and the inability to obtain funds, it was deemed impossible to continue operations of the bank unless and until satisfactory adjustments were made and agreed to by the creditors and ordered that the bank be closed and its affairs be placed in the hands of the national bank examiner. It was agreed that

the bank closed its doors on October 31, 1931, and ceased to do business as a banking concern; that thereafter the Comptroller of Currency of the United States appointed L. B. Withers as its receiver, who was duly qualified and still acting as receiver and administering the trust estate under his appointment; and that if he was present he would testify that since October 31, 1931, the bank was and had been continuously insolvent and had been so declared by the Comptroller of Currency of the United States. That upon final liquidation it would pay some portion of its indebtedness to its respective creditors, the exact amount of which could not at that time be determined. On November 3, 1931, the Comptroller of Currency declared that from information on file in the Treasury Department he was satisfied that the bank was insolvent and unable to pay its just and legal debts and on said day appointed a receiver with all the powers, duties, and responsibilities placed upon him by the provisions of the Revised Statutes of the United States.

B. L. Johnson, who had charge of the bank under the receiver, testified that he had gone over the assets and liabilities of the bank and that the bank was insolvent; that it was wholly unable to pay any check or demand made upon it and had been since his connection therewith; that the amount it would pay its creditors would depend upon the collections that could be made.

The appellants urge as error the action of the trial court in overruling their plea in abatement, because no judgment had been obtained against the Security National Bank, their principal, and neither it nor the receiver were made parties to this suit and the evidence failed to show that the bank was notoriously insolvent, but did disclose that an undeterminable percentage of its obligations would be satisfied from its assets.

Article 6251, R. C. S., provides: "No surety shall be sued, unless his principal is joined with him, or unless a judgment has previously been rendered against his principal, except in the cases otherwise provided for in the laws relating to parties to suits."

Article 1987, R. C. S., provides, in substance, that sureties upon a contract may be sued without suing the principal when he is "actually or notoriously insolvent."

If the record discloses that the Security National Bank was actually insolvent, it was not essential to have obtained a judgment against it or made it or the receiver a party to this suit before the action could be maintained against the sureties. "A bank is solvent when it has enough assets to pay, within a reasonable time, all of its liabilities through its own agencies and is insolvent when unable to meet its liabilities as they become due in the ordinary course of business or, in shorter terms, when it cannot pay its

deposits on demand in accordance with its promise." 5 C. J. 727, § 482; 2 Morse on Banks & Banking (6th Ed.) 1304; Federal Reserve Bank v. Idaho Grimm Alfalfa Seed Growers' Association (C. C. A.) 8 F.(2d) 922; Steele, County Treasurer, v. Randall (C. C. A.) 19 F.(2d) 40.

In Washington National Bank of Tacoma v. Eckels (C. C.) 57 F. 870, 872, it is held that the Comptroller of Currency of the United States is clothed with the power and authority to investigate facts "and act upon his conclusions, his conclusions as to the facts are final, and not reviewable by the courts; so that the decision of the comptroller of the currency in this case, that the bank is insolvent, is to be taken as a finality."

This court held in McWhirter v. First State Bank of 'Amarillo, 182 S. W. 682, 684 (writ of error denied), that: "When the government takes charge of a defaulting bank and is administering its affairs, for the purposes indicated by statute, we think the question of solvency, or technical insolvency, of said bank, is a foreclosed proposition. If the bank were not insolvent, according to the ordinary acceptation of the term; however, the government having suspended its operations, its action for the purposes of this suit, as to that question, is final."

■ The county had deposited with the Security National Bank the funds for the protection of which the bonds were executed. The bank was unable to repay the funds so deposited and unable to meet its liabilities as they became due in the ordinary course of business and could not pay its depositors on demand in accordance with the surety contract. It had been declared insolvent by the Comptroller of the Currency and its business taken charge of by him, and in our opinion under this record and the law, the court did not commit error in overruling appellants' plea of abatement.

[2] The record discloses without controversy that the assets of the bank are not sufficient to satisfy the creditors thereof, and if the appellants were permitted to participate in a distribution of those assets, such assets would be diminished in proportion to the payments made to the sureties therefrom and the appellants would thereby be enabled to deprive the creditors of the full benefit of the security evidenced by the surety bonds. This equity would not permit. Jenkins et al. v. National Surety Company, 277 U. S. 258, 48 S: Ct. 445, 72 L. Ed. 874.

If our conclusions are correct, it is unnecessary to discuss the effect of appellants' failure to file their plea in abatement in the due order of pleading.

What we have said is sufficient to dispose of appellants' contention that the court erred in directing a verdict against them because the testimony presented an issue as to the insolvency of the Security National Bank.

■ The appellants contend that the evidence shows that after the execution of the bonds sued on the county, without their knowledge or consent, by the terms of a written contract it made with the state highway department, deposited to four state-aided projects $216,016.09 of the funds in the bank and thereby placed such funds beyond the control of the county and so changed the obligations of appellants on the bonds as to release them from liability thereon, and if the testimony was not conclusive as to such change, it presented an issue of fact to be determined by the jury.

The county on July 23, 1931, by written contract with the state highway department, agreed to deposit in escrow with the Security National Bank certain sums of money to pay the county's part of the cost of the improvements of certain state highway projects in said county. Pursuant to this agreement the county properly transferred to the escrow account of what we shall designate as the first project, $54,769.52; to the second project, $75,000; to the third project, $75,230.48; and to the fourth project, $25,000. Each of the contracts provided that the escrow fund was secured to the county by the depository bond and by the additional bond of $275,000 and that the money so placed in escrow should be released to the state highway department on vouchers submitted by the commissioners' court, approved by the state highway engineer or his authorized agent. These escrow deposits were made from the proceeds of the sale of road bonds voted by the citizens. The $275,000 bond executed by the appellants provided that it was in addition to the regular depository bond and was made for and to cover and protect the county on all road bonds, money, and funds, including the escrow funds of said county. In our opinion the contract between the county and the highway department of which complaint is made did not relieve the appellants from their liability on the bonds. Sullivan et al. v. City of Galveston (Tex. Com. App.) 34 S.W.(2d) 808.

From a review of the record we conclude that no reversible error is presented, and the judgment of the trial court is affirmed.

MARTIN, J., not sitting.