## HUEY et al. v. BRAND, Banking Com'r, et al.
### No. 4520.

Court of Civil Appeals of Texas. Amarillo.
Jan. 20, 1936.

Rehearing Denied March 30, 1936.

Joseph H. Aynesworth, of Borger, for Arthur Huey.

Hoover, Hoover & Cussen, of Canadian, for Phil Borger and Fritz Thompson, administrators of A. P. Borger's estate.·

Ocie Speer, of Austin, for E. C. Brand, Banking Com'r, Borger State Bank, and Leroy Nelson.

MARTIN, Justice.

On and prior to January 3, 1931, Arthur Huey was the duly qualified and acting tax collector of Hutchinson county, Tex. The Panhandle Bank of Panhandle, Carson county, Tex., was the duly selected and acting county depository of Hutchinson county. The Borger State Bank was a state banking corporation, doing business at Borger, with A. P. Borger as its president. On the last-mentioned date Huey deposited with said state bank the sum of $4,777.40, part of which was undeniably public funds, and part of which presumably was his personal funds. $2,236.84 is known and was deposited as "highway account"; the remainder as "fee account." On said last date a bond was executed and delivered by said bank with A. P. Borger and John R. Miller as sureties, conditioned in substance that in consideration of said deposit, the signers thereof would indemnify Huey against all losses, etc., more particularly set out hereafter.

On January 9, 1932, said bank closed its doors and was taken over by the Banking Commissioner of Texas for liquidation. On April 13, 1932, A. P. Borger executed and delivered a trust deed to 80 acres of land as security for the indebtedness described in the said bond. A. P. Borger died. The administrators of his estate are parties hereto. James Shaw was Banking Commissioner, and was later succeeded in office by E. C. Brand, one of the parties to this suit. After the failure of said bank, Huey paid the state of Texas all amounts owing it, which were on deposit in said bank, and filed his claim as a general depositor with the liquidating agent in charge of said bank, and same was allowed.

Thereafter he filed suit, setting up all the above facts. He sought a judgment, declaring his claim a preferential and prior one against all the assets of said bank; he sued on said bond and for foreclosure of his trust deed. The nature of the defenses interposed will be sufficiently disclosed in the discussion and disposition we make of the legal issues involved.

The judgment of the trial court was, in substance: That Huey recover against the estate of A. P. Borger (Miller and the bank being insolvent) on the aforesaid bond in the sum of $4,777.40, the total amount of said deposits; that a foreclosure of the, trust deed be denied; that Huey recover against Brand, as Banking Commissioner, the sum of $2,236.64, being the amount of the "highway account," same to constitute a preference and prior claim against all the assets of the bank and against all claims save that of the United States government; and that such claim be paid in due course of administration as a preferred claim.

All parties appealed. The three will be disposed of separately.

First, the Banking Commissioner:

Huey, having paid the state, claims that the prior preference of sovereignty passed by subrogation to him. The Banking Commissioner denies that the law gives any such preference to sovereignty over any other general creditor of an insolvent state bank in process of liquidation, and if

it did such could and did not pass to Huey by subrogation under the particular facts of this record. It has recently been pointedly held: "that a state or county has no right to a preference over any other general creditor of the insolvent state bank. Austin, Banking Com'r, v. Lamar County (Tex.Com.App.) 26 S.W.(2d) 1062; Foster v. City of Longview (Tex.Com. App.) 26 S.W.(2d) 1059; Shaw, Banking Com'r, v. U. S. F. & G. Co. (Tex.Com. App.) 48 S.W.(2d) 974, 83 A.L.R. 1113." Denson v. Shaw (Tex.Civ.App.) 62 S.W. (2d) 344, 348 (writ refused). However, we need not and do not rest the disposition of the question presented upon the above holding. It is plainly evident to us that the equitable right of subrogation cannot be claimed by Huey in this case.

 The rule of preferential right of sovereignty to be paid ahead of its citizens comes from monarchial Europe. It is held to be transferred therefrom into the law of democratic America by the legislative adoption of the English common law. It was a prerogative that belonged to ancient kings, before justice for the common man was born. If it may be justified as a cold legal formula, now a part of American jurisprudence, we doubt that either its origin, or the result of its application to the average bank failure, is such as to produce enthusiasm or profound respect in the modern judicial mind of this country. This much is said to show that courts should recognize its binding force in any form only in a clear case. Concerning it the Supreme Court of Pennsylvania has held: "The proper rule is that the state's right to a preference over other creditors, being a sovereign right enjoyed for the benefit of all the people, cannot be transferred to individuals except by express legislative sanction." In re South Philadelphia State Bank's Insolvency, 295 Pa. 433, 145 A. 520, 83 A.L.R. 1123, at page 1125. However, we need not announce such as the Texas rule. Upon equitable principles more hoary with age than Anglo Saxon jurisprudence, Huey is not entitled to the right of subrogation, conceding the preferential right of sovereignty, and that same may be transferred to an individual. We quote some of these:

"Subrogation does not owe its origin to statute or custom, nor is it a doctrine of the common law. It originated in equity and is a creature of equity, a doctrine of equity jurisprudence which was adopted by equity from the Roman or the civil law. * * *

"Subrogation is founded upon principles of justice and equity and rests upon the principle that substantial justice should be attained regardless of form. Its basis is the doing of complete, essential and perfect justice between all the parties without regard to form. * * *

"It will not be enforced unless there is some equitable doctrine upon which it can be predicated, and only when the applicant therefor has an equity to invoke and his cause is just and its enforcement is consonant with right and justice, and then only in a clear case. It will not be allowed where it would be contrary to public policy, or where it would accomplish by indirection that which a statute forbids to be done by direction. * * *

"Nor can the doctrine be extended so as to authorize the application of the principle for the relief and benefit of a party who voluntarily surrenders a right or suffers an injury, the consequence of his own willful neglect or wrong, or who has connived at and assisted in the wrong, for one seeking subrogation must come into court with clean hands. * * *

"The person seeking subrogation must act fairly and equitably and be free from fault. It will not be allowed where he has intermeddled with the rights of others, or is guilty of fraud or culpable negligence, or where he would derive an advantage from, or establish his claim through, his own negligence or, in any way, would thereby reap advantage from his own wrongdoing. * * *

"Subrogation will be granted only where an equitable result will be reached. It will not be allowed when to do so would be inequitable or where it would accomplish injustice." 60 C.J. pp. 696, 697, 698, 699, 701, 702, 707, 708 and 709.

See, also, Padgett v. Young County (Tex.Civ.App.) 204 S.W. 1046; 60 C.J. p. 729.

 In this case Huey openly flaunted the law of the state and violated his oath of office by depositing state funds illegally. A. P. Borger conspired with him in this high-handed act. Now both are before a court of equity, claiming in effect a right of preference over the individual depositors of the Borger State Bank, based upon their own wrongdoing. Who would

pay Huey if his claim be allowed? Obviously the general depositors would contribute. Laborers, bended with toil, gingham-clad washer women, the aged, the infirm, even the orphan—these a part of the usual run of bank depositors—are to be made to enlarge the bank account of Huey and enrich the estate of A. P. Borger. This consequence is claimed to flow directly from a violation of Huey's official duty in making an illegal deposit with Borger's bank. We confess little enthusiasm or respect for the rule which gives the state the legal right to take the assets of an insolvent bank from the above class, and none at all for the rule invoked by both Huey and Borger's estate in this case. That it would work a loss and grave injustice to the general depositors of the Borger State Bank is, to our mind, as clear as sunlight. Such a contention was rejected by the Pennsylvania Supreme Court upon the same reasoning we use here. In re South Philadelphia State Bank's Insolvency, 295 Pa. 433, 145 A. 520, 83 A.L.R. 1123.

The judgment of the trial court allowing the Huey claim as a preference is hereby reversed and rendered in favor of the Banking Commissioner.

The Borger Appeal:

■ The Borger estate claims that Huey had a preference, and negligently failed to file his claim for same; that if same be disallowed the estate should escape liability for the amount of such because of his negligence, and at any rate to the extent of such, the estate is not liable. Reduced to plain language, Borger's estate is entitled to be enhanced at the expense of the general depositors who doubtless trusted both Huey and Borger. Like the poet's fallen woman, they are to be penalized because, "They loved not wisely, but too well." We have already sufficiently indicated our views upon this contention, and same is overruled.

■ It is next contended that the bond by the Borger State Bank, with A. P. Borger and John R. Miller as sureties in favor of Huey, is not enforceable; that it evidenced a transaction in violation of law and against public policy. There is no express statute inhibiting such a transaction. It was not "against public policy" as that term has been defined and applied:

"Generally speaking, a contract which is not in itself immoral or in contravention of any law is not contrary to public policy. But there is no absolute rule by which to determine whether a particular contract is contrary to public policy; each case must be judged by itself.

"Public policy permits the utmost freedom of contract between parties of full age and competent understanding and requires that their contracts, when fully and voluntarily entered into, shall be held sacred and enforced by the courts, and this freedom should not lightly be interfered with by holding that a contract is contrary to public policy. In doubtful cases the presumption is in favor of the validity of the transaction; and where public policy is not settled by recognized principles, a contract will be declared to be in contravention of it only in cases in which the injury to the public is clear." 10 Tex.Jur. pp. 190 and 191.

The bond was a voluntary obligation, supported by a sufficient consideration, and is good as a common-law bond. Watkins v. Minter, 107 Tex. 428, 180 S.W. 227; Bordelon v. Philbrick (Tex.Com. App.) 84 S.W.(2d) 710; Colorado Nat. Bank v. Lester, 73 Tex. 542, 11 S.W. 626.

■ Nor do we think the trust deed was a nudum pactum. It is generally held that an antecedent or pre-existing debt is a sufficient consideration for the execution and delivery of such an instrument. 6 Tex.Jur. 652; 29 Tex.Jur. 824; 41 C.J. p. 380.

■ The bond in question is construed by us to limit the liability of the sureties thereon to the amount of "highway funds" deposited by Huey in such bank. Some of its terms are:

"* * * the undersigned principal, the Borger State Bank, * * * has been selected by Arthur Huey, Tax Collector of Hutchinson County, Texas, as *depository for State highway funds, pending distribution in accordance with the laws of the State of Texas;* * * *

"* * * if the above named principal, the Borger State Bank, *which has been selected as the depository for highway funds, by Arthur Huey, Tax Collector for the County of Hutchinson,* as aforesaid shall faithfully perform all the duties and obligations, *devolving by law upon said depository,* and shall pay upon presentation all checks drawn upon the said Depository by Arthur Huey, Tax Collector of the County of Hutchinson, made payable to the State Highway Department, the County

Treasurer, and to Arthur Huey, Tax Collector of Hutchinson County, for his legal fees as such Tax Collector in collecting the funds so deposited in said Bank, and that said funds shall be faithfully kept by said Depository and accounted for according to law."

"As against sureties no implications are to be made in giving construction to the terms of a bond not clearly embraced within the language used, for it is well settled that sureties are only chargeable according to the strict terms of the bond." 9 C. J. p. 32.

The statement of facts in this case is not indexed. The briefs refer meagerly thereto. We are not able to cast into figures the amount of public money held by said bank as "highway funds."

That part of the judgment denying a foreclosure of the trust deed, and that part allowing recovery for other than "highway funds," are reversed and remanded for further proceedings in accordance with this opinion.

Finally, it is claimed that no proof of insolvency of the bank as principal was made in this case, and therefore judgment against the surety alone was unauthorized. We think the proof met the requirements of the law. Woodley v. Cottle County (Tex.Civ.App.) 52 S.W.(2d) 530; McWhirter v. First State Bank of Amarillo (Tex.Civ.App.) 182 S.W. 682 (writ refused). In view of our disposition of this case it seems unnecessary to discuss this further. It will doubtless be fully proven on another trial.

Reversed and rendered in part, and in part reversed and remanded.