LOCOMOTIVE ENGINEERS AND CON-
DUCTORS MUTUAL PROTECTIVE
ASSOCIATION, Appellant,

v.

Freeman Leo BUSH, Appellee.

No. 1182.

Court of Civil Appeals of Texas,
Tyler.

Jan. 18, 1979.

Grover Russell, Jr., Fairchild, Price & Russell, Center, for appellant.

Ross Skolnick, Gamble, Skolnick & Foster, Robert M. Parker, Nichols & Parker, Longview, for appellee.

McKAY, Justice.

This is a suit for benefits on an insurance contract. Appellee Bush brought suit against appellant claiming he was entitled to payments under an insurance contract which provided for per diem payments for loss of wages by being unemployed because of discharge or suspension as a penalty or disciplinary measure. Appellant answered that appellee was precluded from recovery because of the policy exceptions. Trial was to the court, and judgment was rendered for appellee in the amount of $4,770.00 and attorney's fees of $1,750.00.

Appellee was employed by the Atchison, Topeka & Santa Fe Railway Company in 1957. He worked for Santa Fe until he was removed from his employment in December, 1975, because of alleged violation of the company rules numbers 14 and 16 of the General Rules for the Guidance of Employees.

Rule 14 reads as follows:

"Employees must obey instructions from the proper authorities in matters pertaining to their respective branches of the service. They must not withhold information or fail to give all the facts regarding irregularities, accidents, personal injuries or rule violations."

Rule 16 reads as follows:

"Employees must not be careless of the safety of themselves or others. They must remain alert and attentive and plan their work to avoid injury. Employees must not be indifferent to duty, insubordinate, dishonest, immoral, quarrelsome or vicious. Employees must conduct themselves in a manner that will not bring discredit on their fellow employees or subject the company to criticism or loss of good will."

The trial court made findings of fact and conclusions of law. The findings pertinent to this appeal are as follows: (8.) that the Plaintiff's discharge on December 11, 1975, was occasioned as a penalty or method of discipline; (12.) that the Defendant's sole basis of denying Plaintiff's claim pursuant to Policy No. 160232 is pursuant to the policy exception relating to "knowingly disobeying orders, rules or instruction"; (14.) that the Plaintiff's employer, Atchison, Topeka and Santa Fe Railway Company, had no basis on which to assign a cause which constituted an exception pursuant to the terms of Policy No. 160232; (17.) that the Plaintiff is entitled to judgment of and from the Defendant in the amount of $4,770.00, which judgment was entered on January 12, 1978.

The conclusions of law pertinent to this appeal are as follows: (1.) that the provisions of Policy No. 160232 which reads, "The cause assigned by the employer shall conclusively determine the liability of the Association," is against the public policy of

this state and is null and void and of no force and effect; and (2.) that the insurance contract forming the basis of Plaintiff's claim in this case is governed by the laws of the State of Texas.

The insurance contract provided:

"This policy does not cover discharge or suspension resulting directly or indirectly, wholly or partly from any of the following causes: . . . knowingly disobeying orders, rules or instructions. . . . The cause assigned by the employer shall conclusively determine the liability of the Association."

In its point one appellant contends that the trial court erred in rendering judgment for appellee because of the exception or exclusion above quoted, i. e., that appellee knowingly disobeyed rules 14 and 16; and in point two appellant says that the trial court's finding that appellee did not knowingly disobey orders, rules or instructions "is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust and wrong."

By point three appellant maintains that it was error for the trial court to find that the portion of the exception reading "The cause [for discharge or suspension] assigned by the employer shall conclusively determine the liability of the Association" is void and against public policy of this state.

Point four complains that the trial court erred by holding that the insurance contract is governed by the laws of Texas.

■ We shall address the fourth point first. Appellant contends that the law of the State of Michigan should apply rather than that of the State of Texas. We disagree with that contention for the reason that Article 21.42, Texas Insurance Code,[1] provides:

"Any contract of insurance *payable to any citizen or inhabitant of this State* by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and gov-erned thereby . . .." [Emphasis added.]

While the appellant here is not shown to be a citizen or resident of Texas appellant was doing business in Texas, and the policy was solicited by appellant's agent in Texas, was issued to a Texas resident, and was delivered to appellee in Texas.

Article 21.43, Insurance Code, provides in part:

"(a) The provisions of this Code are conditions upon which foreign insurance corporations shall be permitted to do business within this state, and any such foreign corporation engaged in issuing contracts or policies within this state shall be held to have assented thereto as a condition precedent to its right to engage in such business within this state."

Point four is overruled. However, our ruling that Texas law applies does not necessarily dispose of this case. No constitutional or statutory provision or case law of this state concerning the point in controversy has been cited to us, nor have we found any. Therefore, any authority which we may find in any jurisdiction which is persuasive on the point in controversy may be followed.

The complaint of appellant in its point three is that the trial court erred in holding that the exception in the policy providing that the cause of discharge or suspension assigned by the employer conclusively determined the liability of the appellant is against public policy. Appellant argues that the above provision is not against public policy, and that both parties were free to contract that a third party could determine the cause for discharge or suspension and that such decision would be conclusive. Appellee argues that to uphold the provision would preclude the courts of this state from construing and making fact-finding conclusions under the contract, and could lead to collusion between employers and an insurance company precluding policyholders like appellee from effectively having any coverage at all. Neither party cites any authority to support the argument made.

---

1. All references to articles are to Texas Revised Civil Statutes unless otherwise indicated.

While there is no fixed rule or definition which applies to all cases, a contract against public policy is generally defined as a provision or stipulation which is illegal or which is inconsistent with or contrary to the best interest of the public. It is said to be "the principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare." 17 Am.Jur.2d Contracts, secs. 175 and 179. Expressions of public policy are found in a state's constitution, statutes and judicial decisions. *Dairyland County Mutual Ins. Co. v. Wallgren*, 477 S.W.2d 341, 342 (Tex.Civ.App.-Fort Worth 1972, writ ref'd n. r. e.). In *St. Regis Candies, Inc. v. Hovas*, 117 Tex. 313, 3 S.W.2d 429, 433–4 (Comm'n App. 1928, opinion adopted), is found this language:

"An important requirement of policy is 'that men of full age and competent understanding shall have the utmost liberty of contracting and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice' unless, perchance, contravention of public right or welfare very clear [sic] appears."

In *Hatch v. Turner*, 145 Tex. 17, 193 S.W.2d 668, 669 (1946), it is said:

"Undoubtedly the parties to an insurance contract may make it in any legal form they desire and, in the absence of statutory prohibitions, insurers may limit their liability and impose whatever conditions they please upon their obligations not inconsistent with public policy."

See 35 Words and Phrases, Public Policy, p. 480; 13 Tex.Jur.2d Contracts, sec. 171.

There is no contention the provision in the insurance contract in question violates the Constitution or statutes of Texas; nor is there any case cited to us (nor have we found one) which holds that it is against the public policy of this state or is otherwise illegal. Then the question remains: Does the provision do harm to the public? It is difficult to perceive harm to the general public for two parties to contract that the employer of one may give the reason for the discharge or suspension of his employee, and such reason shall be conclusive as to the employee's benefits under an insurance contract.

Appellee argues that the provision in question here would or could lead to collusion between employers and insurance companies in discharging employees. There is nothing in the record to indicate that the employer knew that appellee had any policy of insurance. That there could be collusion between employers and insurers is not a sufficient ground to hold the provision to be against public policy.

The suit in *United American Insurance Co. v. Selby*, 161 Tex. 162, 338 S.W.2d 160, 163 (1960), upheld an exclusion providing no coverage for "any period during which the insured is not under the personal and regular attendance of a legally licensed doctor of medicine or osteopathy, other than Insured," as being valid and reasonable and a condition precedent to the right of recovery of benefits and not against public policy. In so holding the court overruled several Court of Civil Appeals cases which had held that the provision was evidentiary in effect and would not operate to bar the claim of a person who was actually disabled and was against public policy. It would appear that if the reasoning in *Selby* is followed here appellee would have the burden of meeting the condition precedent that his employer had indicated a reason for discharge other than those listed in the exclusionary clause.

Here the employer railroad, with notice to appellee, held a formal hearing before D. E. Mader, Superintendent, Southern Division of Santa Fe. Appellee was present at the hearing, and he had as his representative R. L. Aguilar, District Chairman, Brotherhood of Railway Clerks. A complete record of that hearing was made and has been included in the record before this court. If there was any dissatisfaction with that hearing or the result thereof, there is no indication of an appeal or review if such was available. The record does not disclose whether appeal or review of the railroad hearing could have been had.

We have not found any Texas authority in point; however, the case which has a fact

situation nearest to the one at bar seems to be the old Michigan case of *Stitt v. Locomotive Engineers' Mutual Protective Ass'n,* 177 Mich. 207, 142 N.W. 1110 (1913). In *Stitt* the insured agreed in his application for insurance "that the cause assigned by my employer for suspension or discharge shall be the sole basis of determining the liability of the association." The Supreme Court of Michigan held (142 N.W. p. 1113):

"The contract must govern, though it may be more harsh and unfavorable to plaintiff than defendant. Courts do not make contracts for parties; they can only construe and administer them.

"Defendant is of that class of mutual, indemnity, or insurance companies organized, apparently without capital, on the assessment plan to secure to its members a continuance of wages, when out of employment, for a certain length of time, under specified conditions. Those conditions seem to be conspicuously numerous and stringent in this instance; but a member of such an association is at the same time an insurer and an insured. In contemplation of law he is a party to imposing the conditions and restrictions in the policy issued to members.

"When he accepts such policy, his rights as an insured are determined by its terms, whatever they may be . . . ."

D. E. Mader testified that as Superintendent, Southern Division of the Santa Fe, he was the head operating officer of that division; that all employees are given a rule book under which they work and are instructed to acquaint themselves with the rules; that Rule two of the General Rules for the Guidance of Employees provides that "Employees must be conversant with and obey the company rules and special instructions. If an employee is in doubt and does not know the meaning of any rule or instruction, he should promptly ask his supervisor for an explanation. A copy of form 2626 [will] be furnished to each employee to be retained by him for his guidance."

Mader further testified charges were brought against appellee Bush because of an incident reported by R. E. Raley, a relief operator, and that a formal investigation was set to determine whether there was any violation of the company rules by Bush; that such formal investigation was held at Longview on December 12, 1975, and the testimony and facts brought out in the investigation indicated Bush violated rules fourteen and sixteen of the General Rules for the Guidance of Employees, and as a result Bush was dismissed from the service of the Santa Fe.

When asked directly why Bush was removed from service with Santa Fe, Mader answered, "He was removed from service for violating the company rules, Rule Fourteen, Sixteen of the General Rules [for] the Guidance of Employees," and that Bush was removed from service for "knowingly and deliberately failing to give all the facts to Assistant Trainmaster D. H. Gill in regard to the incident of November 12, 1975." The record of the formal investigation reveals, "It is the decision that F. L. Bush be removed from service for violation of Rules 14 and 16 of General Rules for the Guidance of Employees, 1975."

The record discloses that the decision by the Santa Fe to discharge appellee from service was based upon evidence heard at the formal hearing. Appellee makes no charge that the decision to discharge him was arbitrarily made. Considering the testimony of Raley and Tim Ford, hotel clerk at the Downtowner Motel at Longview, and the testimony of appellee Bush, it is apparent that it was not arbitrarily made. According to the record appellee Bush denied being at the Downtowner Motel. Raley and Ford both testified he was there, and Raley testified appellee attempted to go to his (Raley's) room without his invitation or consent, and grabbed Raley's luggage and went up in the elevator with Raley.

We are of the opinion that the provision in the insurance contract that the decision of the employer as to the reason for discharge is conclusive does not violate public policy; therefore, it being undisputed in the record that appellee was discharged for violating rules fourteen and sixteen, appellee

is not entitled to recover. Point three is sustained. We do not reach points one and two.

Judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing.