**AMERICAN HOME ASSURANCE COMPANY, Plaintiff–Counter–Defendant–Appellee,**

**v.**

**Billy Carl STEPHENS, Defendant–Counter–Claimant–Appellant,**

**Rory Ross, Defendant–Appellant.**

No. 96–20192.

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1997.

John Francis Sullivan, III, Reagan Mark Brown, Fulbright & Jaworski, Houston, TX, for American Home Assurance Company.

James Bradley Lewis, Peter M. Kelly, Glover, Anderson, Chandler & Uzick, Houston, TX, for Stephens and Ross.

Before POLITZ, Chief Judge, and REAVLEY and DENNIS, Circuit Judges.

POLITZ, Chief Judge:

This appeal of the district court's ruling on cross motions for summary judgment in an action for declaratory relief raises questions about the validity of an exclusion of coverage for sexual misconduct provision when applied to nonsexual misconduct claims. For the reasons assigned we reverse the summary judgment rendered in favor of American Home Assurance Company and render summary judgment in favor of Billy Carl Stephens and Rory Ross.

## BACKGROUND

Stephens was a licensed Professional Counselor and Advanced Clinical Social Worker Practitioner in Texas.[1] American Home issued Stephens a social worker professional liability insurance policy. The policy had a $3 million aggregate limit, with a $1 million limit for each wrongful act or series of acts, except when allegations of sexual misconduct were raised. In those cases, the aggregate limit was $25,000. The sexual misconduct provision states:

> The total limit of the Company's liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt thereat or proposal thereof:
>
> (a) by any Insured or by any other person for whom any Insured may be legally liable: and
>
> (b) with or to any former or current patient or client of any Insured, or with or to any relative of or member of the same household as any said patient or client or with or to any person with whom said patient or client or relative has an affectionate personal relationship.

In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related wrongful acts and/or occurrences and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $25,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this policy. The Company shall not be obligated to undertake nor continue to defend any suit or proceeding subject to the aforesaid $25,000 aggregate limit of liability after said $25,000 aggregate limit of liability has been exhausted by payments for damages.

Ross was Stephens' client from March 1988 through June 1992. On January 11, 1994 Ross sued Stephens for negligence, alleging that he had failed to diagnose and treat her condition properly and that he had rendered improper treatment for her condition as a victim of child abuse and incest. Ross amended her original petition to request punitive damages for gross negligence,

---

1. *See* Licensed Professional Counselor Act, Tex. Rev.Civ.Stat. art. 4512g; Texas Professional Social Work Act, Tex.Hum.Res.Code §§ 50.001–50.034. In August 1994 the complaints committee of the Professional Licensing and Certification Division of the Texas Department of Health voted to propose revoking Stephens' license for engaging in a sexual relationship with a client other than Ross. Before his license was revoked, Stephens allowed it to lapse.

alleging that Stephens knew his behavior posed an extreme risk of harm to his clients, including herself, and that he proceeded with conscious indifference to their rights, safety, and welfare. Ross did not allege sexual misconduct.

American Home hired an attorney to defend Stephens in the malpractice action and gave him a reservation of rights letter explaining the limited nature of the representation. The letter quoted from the sexual misconduct provision and stated that any damages for sexual misconduct would be limited to $25,000. The letter further advised that American Home reserved its rights under the policy to modify its coverage determination at any time. American Home emphasized that it would not pay any award based on excluded grounds and advised Stephens that he might want to involve, at his own expense, a personal attorney to defend against such grounds should the need arise.

In October 1994 Ross filed a written complaint against Stephens with the Texas State Board of Examiners of Professional Counselors, alleging, among other incidents of misconduct, that Stephens had engaged her in sexual relations on five to seven occasions during their therapeutic relationship. Thereafter, Ross filed a motion in the malpractice action in which she stated that "in addition to mishandling her treatment, [Stephens] used his position and influence over [her] to have her ... engage in sexual activities ... while acting in a position of a fiduciary." Counsel for both Ross and Stephens inquired into the allegations of sexual misconduct during subsequent discovery.

In his deposition, Stephens admitted that he had engaged in sexual intercourse with Ross while she was his client and conceded the detrimental effects of his actions. During her depositions, Ross was questioned extensively about the sexual relationship by both Stephens' and her own attorney. Ross also cited numerous examples of non-sexual mistreatment, including Stephens' requirements that she perform his household tasks of ironing, mending, shopping, cleaning, yard work, and running errands. In a motion to compel further deposition testimony from Stephens, Ross asserted that Stephens sexu-

ally and socially exploited her, causing her physical and emotional injury.

In June 1995 American Home filed the instant action against Stephens and Ross seeking a declaration that its total liability under the policy was limited to $25,000 because Ross had asserted claims of sexual misconduct. On July 10, 1995, the day the malpractice trial was scheduled to begin, Stephens asserted that his attorney had a conflict of interest and was granted leave to substitute the attorney appointed by American Home for independently retained counsel. American Home protested the substitution and refused to pay for any costs associated with Stephens' defense, maintaining that Stephens would be provided with a vigorous defense through the company appointed attorney.

Stephens and Ross agreed to enter into binding arbitration to resolve the malpractice dispute. American Home objected and informed Stephens that it would not agree to be bound by the arbitrator's decision. The company contended that pursuant to the policy, American Home was not obligated to pay unless a judgment against Stephens resulted from an actual trial on the merits, or the company agreed to settle with Ross. Stephens and Ross submitted to arbitration on August 3, 1995. During the proceeding Ross did not present any evidence of sexual misconduct between herself and Stephens, although she did introduce evidence of sexual misconduct between Stephens and his other clients in support of her gross negligence claim. Stephens did not contest Ross' allegations of negligence. The arbitrator found that Stephens was negligent in the rendition of professional care and treatment to Ross, but found that the evidence was insufficient to support a finding of gross negligence. Ross was awarded actual damages of approximately $2.9 million.

In the meantime, American Home moved for summary judgment in the declaratory judgment action. Stephens and Ross filed responses thereto and filed cross motions for summary judgment. The district court subsequently granted American Home's motion for summary judgment and denied the cross motions, declaring that American Home's to-

tal liability for Ross' claim against Stephens is $25,000 under the sexual misconduct limitation in the policy. Stephens and Ross timely appealed.

## ANALYSIS

■ This appeal presents a number of issues. Accepting American Home's contention, however, that as long as "erotic physical contact" is alleged at any time and in any manner, all claims, including claims alleging non-sexual misconduct, are subject to the $25,000 aggregate limit of liability, we are presented first and foremost with an issue of public policy. The narrow question presented is whether it is against public policy for an insurer to limit coverage for a therapist's non-sexual misconduct because sexual misconduct is alleged to have occurred in the same or related course of professional treatment, even though such sexual misconduct is immaterial to the non-sexual misconduct claims asserted. Concluding that such a limitation of coverage is against public policy, we need not address the other issues raised.

■ We review the district court's grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party.[2] Summary judgment is appropriate only in cases in which no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[3] In Texas, a limitation in an insurance contract is against public policy and invalid as a matter of law when a provision is illegal or is inconsistent with or contrary to the best interests of the public.[4] "Expressions of public policy are found in a state's constitution, statutes and judicial decisions."[5]

Although there is no contention that the application of the sexual misconduct provision to non-sexual misconduct claims violates the Texas constitution and its state courts

have yet to consider the issue, Texas statutory authority expresses a clear policy of encouraging victims to report sexual misconduct by therapists.[6] The Sexual Exploitation By Mental Health Services Provider Act gives the patient-victim a statutory cause of action against the therapist, entitling her to actual and exemplary damages and reasonable attorney fees.[7] A cause of action also exists against the employer of the therapist if the employer knew or should have known of the sexual exploitation, but failed to disclose it.[8] The Act imposes an affirmative duty on mental health services providers and their employers to report known or suspected sexual exploitation to both the county prosecutor and state licensing board.[9] A breach of this duty constitutes a Class C misdemeanor and subjects the person to disciplinary action by the licensing board.[10]

The limitation of insurance coverage for non-sexual misconduct claims if sexual misconduct is also alleged would appear to markedly chill the enthusiasm of a victim to report the sexual misconduct. This disincentive in reporting sexual misconduct is unique to those instances where independent non-sexual misconduct has also occurred as opposed to incidents where sexual misconduct is the sole or essential basis for a claim because in the latter instance, the sexual misconduct constitutes the claim and must be alleged and proven to support the cause of action. In the prior instance, however, a victim who has been subject to non-sexual misconduct independent of sexual misconduct might allege a cause of action therefor but feel pressured to conceal the sexual misconduct. In fact concealment, which is to be abjured, would appear to be manifestly encouraged by the limitation provision for disclosure of any sexual misconduct would occasion the victim's forfeiture of

---

2. *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir.1993).

3. Fed.R.Civ.P. 56(c).

4. *Locomotive Eng'rs & Conductors Mut. Protective Ass'n v. Bush,* 576 S.W.2d 887 (Tex.Civ.App. 1979).

5. *Id.* 576 S.W.2d at 890.

6. Tex.Civ.Prac. & Rem.Code § 81.001–81.009.

7. *Id.* §§ 81.002, 81.004.

8. *Id.* § 81.003.

9. *Id.* § 81.006.

10. *Id.*

liability insurance protection for injury caused by non-sexual misconduct. American Home's attempt thus to avoid liability for injuries caused by malpractice that is unrelated to sexual misconduct unfairly focuses on the victim rather than the actions of the insured.[11] These results are contrary to public policy.

The interests of the insured are also subverted by allowing insurers to limit substantially their liability for non-sexual misconduct claims with the mere allegation of sexual misconduct, whether revealed solely for purposes of professional or criminal reprimand, or by others, and no matter how substantiated or incidental the allegations might be. The insurance company has a compelling motivation to discover sexual misconduct if not disclosed and to infuse sexual misconduct into a plaintiff's cause of action. Such is directly contrary to the interest of an insured in that the insurer's exposure is reduced while the insured's uncovered exposure is concomitantly increased. An attorney hired by an insurance company to represent the insured thus is presented with a major conflict of interest. Such conflicts are absolutely unacceptable and are to be avoided without exception. The attorney may not be put in the position of having to harm one client to advance the cause of another. No attorney may represent both the insured and the insurer in this setting. Ethical considerations simply will not permit of such.

Taking a restricted view, one might suggest that the limitation supports public policy because the therapist may be discouraged thereby from committing sexual misconduct for fear of losing substantial insurance coverage. Obviously deterring such misconduct is in the public interest, but it is abundantly clear that the legislature has enacted licensing regulations which serve the deterrent function without harming the victim or discouraging appropriate reporting if sexual misconduct should occur.[12] In addition, it cannot be gainsaid that non-sexual misconduct claims do not raise the concerns about potentially large jury verdicts that often result from suits involving the emotionally charged subject of sexual exploitation by a therapist. Those concerns are advanced as justification of the limitation as a valid attempt to offer affordable premiums and to thus maintain health care costs,[13] but are not persuasive.

The unique public policy concerns implicated when both sexual and non-sexual misconduct claims independently exist distinguishes this case from those which uphold the special provision.[14] In those cases, sexual misconduct was the fundamental basis for the relief sought.[15] Thus, American Home's reliance on *Stone*[16] is not persuasive. The court in *Stone* acknowledged "that there may be situations where the sexual misconduct can be distinctively separated from other types of malpractice acts," but noted that such was not the situation then before it.[17]

■ Contrary to American Home's contentions, Ross alleges acts of malpractice that are separate from the sexual misconduct allegations. For example, Ross asserts that Stephens had her perform his personal errands which occurred for approximately two years prior to any sexual contact. Ross' allegation that Stephens failed to properly diagnose her condition also stands independent of any incidents of sexual misconduct. We are cognizant that even though Ross' petition does not allege sexual misconduct, that clearly was raised during discovery and in subsequent pleadings. Nevertheless, Ross did not pursue any claims relating to

11. *American Home Assurance Co. v. Cohen*, 815 F.Supp. 365 (W.D.Wash.1993).

12. Tex.Admin.Code tit. 22, § 681, *et seq.*; Licensed Professional Counselor Act, Tex.Rev.Stat. art. 4512g.

13. *American Home Assurance Co. v. Stone*, 61 F.3d 1321 (7th Cir.1995).

14. *See id.; McConaghy v. RLI Ins. Co.*, 882 F.Supp. 540 (E.D.Va.1995); *American Home As-*

surance Co. v. Smith, 218 Ga.App. 536, 462 S.E.2d 441 (1995).

15. Because the issue is not before us, we make no determination about the validity of the special provision when applied to sexual misconduct claims.

16. *Stone*, 61 F.3d 1321.

17. *Id.* at 1329.

Stephens' alleged sexual misconduct but, instead, presented such evidence solely in relation to her independent non-sexual misconduct claims.[18]

■ Even if Ross had litigated her sexual misconduct claims along with her non-sexual misconduct claims, raising issues about the apportionment of damages, such issues are within the purview of the trier of fact. As noted by the court in *Cohen*, "[t]he task of separating multiple claims and apportioning damages has been one of the traditional functions of the trier of fact." [19] Thus, in situations where both sexual and non-sexual claims independently exist, the trier of fact can apportion damages, if any, arising from the sexual and non-sexual misconduct.[20] The insurer may then apply its coverage sublimit to those damages resulting from sexual misconduct while reimbursing the claimant for damages resulting from non-sexual misconduct under the policy's applicable full coverage provisions.

Accordingly, we hold that the district court erred in granting summary judgment in favor of American Home. We REVERSE the judgment of the district court and RENDER summary judgment in favor of Stephens and Ross. The matter is REMANDED to the district court for entry of an appropriate judgment consistent herewith.

18. American Home asserts that Ross presented evidence of Stephens' sexual misconduct with other patients during the arbitration proceeding, creating a sexual misconduct claim. This evidence related to other patients, however, and did not involve allegations that Stephens committed sexual misconduct against Ross. Because this evidence was presented solely to establish gross negligence and the arbitrator found it insufficient to support such a finding, we need not consider the issue further. We find American Home's reliance on the arbitrator's finding relating to the transference phenomenon as evidence of a sexual misconduct claim equally without merit. While acknowledging that Ross did not present evidence of Stephens' sexual misconduct against her, American Home asserts that the transference phenomenon infers a finding of sexual misconduct. Transference is "the projection of feelings, thoughts and wishes onto the analyst." Stedman's Medical Dictionary 1622 (25th ed. 1990). Although the mishandling of this phenomenon "generally" results in sexual relations, in the absence of the presentation of evidence of

REAVLEY, Circuit Judge, dissenting:

I respectfully dissent. In this diversity suit, our task is not to decide whether the exclusion in issue is against public policy. "We are emphatically not permitted to do merely what *we* think best; we must do that which we think the [State] Supreme Court would deem best." [1]

I do not believe the Texas Supreme Court would rule the exclusion void as against public policy. The general rule in Texas is that parties are free to contract as they wish, and the court will enforce the terms of their contract as written. Only in the rare case does Texas law deem a contract term void on public policy grounds. "Public policy permits the utmost freedom of contract ... and this freedom should not lightly be interfered with by holding that a contract is contrary to public policy." [2] "The courts do not lightly interfere with freedom of contract, and the principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which the doctrine rests." [3] "In doubtful cases the presumption is in favor of the validity of the transaction; and where public policy is not settled by recognized principles, a contract will be declared to be in contravention of it only in cases in which the injury to the public is clear." [4]

such sexual misconduct we decline to so extend the arbitrator's finding.

19. *Cohen*, 815 F.Supp. at 372.

20. If needed, the insurer may intervene to defend its interest with regard to the damage apportionment.

1. *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.1986) (en banc) (emphasis in original).

2. *Huey v. Brand*, 92 S.W.2d 505, 508 (Tex.Civ. App.—Amarillo 1936), *aff'd*, 131 Tex. 614, 118 S.W.2d 303 (1938).

3. *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 924 (Tex.App.—Fort Worth 1988, writ denied). *Accord Hirsch v. Texas Lawyers' Ins. Exchange*, 808 S.W.2d 561, 564 (Tex.App.—El Paso 1991, writ denied).

4. *Huey*, 92 S.W.2d at 508.

I am further of the view that Texas courts should show an even greater than ordinary reluctance to declare a contract term in an insurance policy void as against public policy, even though insurance contracts are usually contracts of adhesion. The Texas Legislature has provided for extensive regulation of insurance policies by the Texas Department of Insurance. Article 5.13–2 of the Texas Insurance Code regulates medical professional liability policies.[5] Under this article insurance policies cannot be issued unless approved by the Commissioner of the Texas Department of Insurance.[6] The Commissioner may also issue standard insurance policy forms to be used in lieu of the insurer's own forms.[7] The article states that its purposes are, *inter alia*, to "promote the public welfare," "promote availability of insurance," and "promote price competition among insurers." [8]

Against this regulatory backdrop, the Texas Supreme Court has expressed reluctance to alter the terms of an insurance contract. In *Members Mutual Insurance Co. v. Cutaia,*[9] the court considered whether a prejudice requirement should be implied in a policy provision excluding coverage if the insured fails to provide notice of suit to the insurer. The court recognized that "[w]hile an injustice has apparently resulted in this particular case, the matter of rewriting the insurance provisions in question is properly within the prerogative of the State Board of Insurance or the Legislature." [10] It concluded "that on balance it is better policy for the contracts of insurance to be changed by the public body charged with their supervision, the State Board of Insur-

ance, or by the Legislature, rather than for this Court to insert a provision...." [11]

I would hold that the exclusion in issue does not so plainly disserve the public interest that we should conclude that the Texas Supreme Court would hold it void. The exclusion discourages disclosure of sexual misconduct, which is surely against the public interest, as the majority notes. However, as the majority concedes, it might also discourage the conduct itself. The exclusion may sweep more broadly than required to discourage sexual misconduct, since it limits coverage if sexual misconduct is even alleged. Nevertheless, the exclusion surely serves to discourage the conduct itself.

Further, the exclusion serves the express statutory goal of promoting availability of insurance, by limiting coverage on a class of claims which can easily result in large judgments. In upholding an identical exclusion, the Seventh Circuit explained:

> American Home's Professional Liability insurance policy ... was issued for a premium charge of $209.00 per year. The "Sexual Misconduct" provision can be considered a legitimate effort by American Home to offer a reasonably priced insurance policy and at the same time limit its exposure to a substantial hazard or risk of loss. This is true especially in light of the potentially large jury verdicts that often result from suits involving the emotionally charged subject of sexual exploitation by a psychotherapist.... For the vast majority of mental health professionals who never engage in sexual exploitation of their patients, this kind of insurance policy fills an important gap in the marketplace. Voiding the "Sexual Misconduct" provision

**5.** Tex.Ins Code Ann art. 5.13–2, §§ 1–2 (Vernon Supp.1998).

**6.** *Id.* § 8(a).

**7.** *Id.* § 8(e).

**8.** *Id.* § 1.

**9.** 476 S.W.2d 278 (Tex.1972).

**10.** *Id.* 476 S.W.2d at 278.

**11.** *Id.* 476 S.W.2d at 281. The result in *Cutaia* was in fact changed by action of the State Board of Insurance, which subsequently required a

mandatory endorsement stating that failure to give notice under the policy does not bar coverage absent prejudice to the insurer. *See Hanson Production Co. v. Americas Ins. Co.,* 108 F.3d 627, 629 (5th Cir.1997). We recognized in *Hanson* that the Texas Supreme Court's analysis in *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691 (Tex.1994), does not square with the analysis offered in *Cutaia. Hanson,* 108 F.3d at 630. However, I do not read *Hernandez* as casting doubt on *Cutaia's* recognition that, as a general matter, the terms of insurance contracts are best left to the Board of Insurance or the Legislature.

may produce the unintended result of requiring the well-behaving majority to subsidize the misconduct of a few, and increasing health care cost.... Indeed, a number of studies have reported that psychotherapists' sexual involvement with patients is a leading cause of all private psychotherapist malpractice claims and is the most frequent source of litigation against psychologists insured through the American Psychological Association.[12]

The majority suggests that the exclusion creates a perverse incentive for the insurer to interject sexual misconduct into the suit, for the purpose of triggering the $25,000 limit on coverage. I cannot disagree that an unscrupulous insurer might be so inclined. However, I have no doubt that the Texas courts would view such a maneuver as a bad faith denial of coverage, actionable under Texas common law,[13] or an unfair claim settlement practice, actionable under Texas statute,[14] or both. When an insurer provides counsel under its duty to defend, Texas law is clear that counsel's duty of loyalty is owed to the insured, not the insurer.[15]

There are always such perverse incentives where coverage is limited, as it always is. For example, standard homeowner, automobile, and comprehensive general liability policies provide coverage for an "accident" or "occurrence," and contain an exclusion for intentional injury. The Texas courts, in a long line of cases which do not submit to simple analysis, construe such policies to exclude coverage for certain types of intentional wrongdoing,[16] including sexual misconduct.[17] Under such policies, the insured (and any party injured by the insured) has an incentive to characterize the event giving rise to the claim as accidental, negligent or otherwise within the policy's coverage, while the insurer has an incentive to characterize the event as resulting from intentional misconduct outside the coverage. Such incentives, however, have not led the Texas courts to declare the standard policies void as against public policy.

The district court addressed the case carefully and correctly. I would affirm the judgment.

---

**12.** *American Home Assurance Co. v. Stone,* 61 F.3d 1321, 1326, 1331 (7th Cir.1995).

**13.** *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987).

**14.** Tex. Ins.Code Ann. arts. 21.21, 21.21–2 (Vernon 1981 & Supp.1998).

**15.** *Employers Cas. Co. v. Tilley,* 496 S.W.2d 552, 558 (Tex.1973). The sweeping statement of the majority, saying that "[n]o attorney may represent both the insured and the insurer ..." where an issue of coverage may exist, is unwarranted. Admittedly, this is a situation requiring care, but

we and the Texas courts can deal with it without a "drop dead" rule.

**16.** *See, e.g., Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819 (Tex.1997); *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374 (Tex.1993); *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633 (Tex.1973).

**17.** *J.E.M. v. Fidelity & Cas. Co. of New York,* 928 S.W.2d 668, 674–75 (Tex.App.—Houston [1st Dist.] 1996, no writ).