**NORTH POINT PATIO OFFICES VEN-TURE, A Partnership and North Point Patio Offices Venture, Inc., Appellants,**

v.

**UNITED BENEFIT LIFE INSURANCE COMPANY, Appellee.**

**No. A14–82–819CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 10, 1984.
Rehearing Denied June 7, 1984.

Thomas E. Bartley, Houston, for appellants.

D. Brent Wells, Kirklin, Boudreaux & Joseph, C. Robert Keeney, Jr., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

OPINION

DRAUGHN, Justice.

North Point Patio Offices Venture (North Point) appeals from a summary judgment granted in favor of United Benefit Life Insurance Co. (United Benefit). The sole issue is whether the so-called "due on sale" clause (alternatively referred to as an optional acceleration clause) contained in a deed of trust between North Point and United Benefit constitutes an unreasonable restraint on the alienation of property. The "due on sale" clause provides for optional acceleration of the entire indebtedness by United Benefit if North Point sells the mortgaged property to a third party without the prior written consent of United Benefit. North Point contends the clause was unenforceable and the trial court therefore erred in granting summary judgment for United Benefit. We find that the clause in question permitted appellee to coerce appellant to pay a transfer fee which apparently served no real purpose except to allow alienation. We therefore reverse and remand.

The record reflects that North Point borrowed money from United Benefit in order to purchase commercial property. The repayment of the loan was secured by a purchase money lien contained in a deed of trust signed by officers of North Point and United Benefit. The deed of trust included the following clause in question:

> Except for a "Permitted Transfer" (as hereinafter defined), for a period of five (5) years from the date hereof (the "Restricted Period"), *Grantor will not sell, lease, exchange, assign, transfer, convey or otherwise dispose of all or any part of the Property or any interest therein* ... without the prior written consent of the Noteholder. (Emphasis added)

The deed of trust then defines "Permitted Transfers" as follows:

> For purposes hereof, a "Permitted Transfer" shall be a sale, lease, exchange, assignment, transfer, conveyance or other disposition of the Property, or an interest therein, during the Restricted Period (all of the aforesaid being collectively hereinafter referred to in this paragraph (o) as a "Transfer") after which Transfer *all* of the following conditions remain satisfied:
>
> (i) At all times during the Restricted Period Grantor retains at least fifty percent (50%) undivided interest in and to the property; and
>
> (ii) At all times during the Restricted Period Grantor remains obligated on the Note (subject to and in accordance with the terms thereof, including, without limitation, the limitation on personal liability of Grantor set forth therein); and
>
> (iii) At all times during the Restricted Period Grantor remains responsible for management, leasing and operation of the Property.

This deed of trust further provides that in the event of default by the Mortgagor, the Mortgagee shall have the option to accelerate the debt and to declare the entire unpaid balance due and payable. The deed of trust also provides that "[t]he Noteholder shall, in addition to the remedies herein provided, be entitled to avail themselves of all such other remedies as may now or hereafter exist at law or in equity for the collection of the secured indebtedness and the enforcement of the covenants herein ...." These seem to be the relevant provisions of the documents here involved.

Approximately one year after completion of this transaction, North Point found it necessary to sell the mortgaged property to a third party. United Benefit was allegedly dissatisfied with the proposed transfer, but rather than accelerate the entire debt, United Benefit proposed that North Point pay them a cash consideration equal to 5% of the then outstanding indebtedness, which payment amounted to $42,160.70. North Point paid the fee, but stated that it did so under protest. Thereafter, North Point filed suit against United Benefit alleging several causes of action, including the contention that the due on sale clause constituted an unreasonable restraint on alienation of property. United Benefit then sought, and the court granted, summary judgment from which North Point now appeals.

■ Due on sale clauses have been a source of frequent litigation, the most recent of which are *Sonny Arnold, Inc. v. Sentry Sav. Ass'n,* 633 S.W.2d 811 (Tex. 1982) and *Metropolitan Sav. & Loan Ass'n v. Nabours,* 652 S.W.2d 820 (Tex.App.— Tyler 1983, writ dism'd). These cases establish a two-step process for determining the validity of such a clause. First, the court must decide whether the clause constitutes a restraint on alienation of property. *Sonny Arnold* at 813. If it does, the court must then decide whether it is an unreasonable restraint and therefore void as against public policy. *Metropolitan Savings* at 822. *See Sonny Arnold* at 820, Spears, concurring.

In *Sonny Arnold* the Supreme Court held that a due on sale clause was not an unreasonable restraint where it specified that the original lender could require from a subsequent purchaser an assumption

agreement providing for an increased rate of interest payable under the note. The court turned to the Restatement and reasoned as follows:

The Restatement of Property defines restraints on alienation. It classifies restraints into three types: (1) disabling restraints, (2) promissory restraints, and (3) forfeiture restraints. Since the clause in this case does not attempt to cause a later conveyance to be void or terminate the property interest conveyed, it is neither a disabling restraint nor a forfeiture restraint. As a result, we must determine if the clause constitutes a promissory restraint on alienation.

In order to satisfy the Restatement definition of a promissory restraint, the clause must attempt to "cause a later conveyance to impose contractual liability on the one who makes the later conveyance *when such liability results from a breach of an agreement not to convey ...*" (emphasis added). Restatement of Property, § 404(1)(b) (1944). The clause in this case does not contain an agreement not to convey as required by the Restatement. *Mattern v. Herzog,* 367 S.W.2d 312, 319 (Tex.1963).

*Sonny Arnold,* 633 S.W.2d at 813–14. The Court concluded on page 815, "In light of the foregoing authority, we do not believe the clause before us constitutes the type of restraint on alienation prohibited by the Restatement of Property."

█ We must then decide whether the clause here is an "unreasonable" restraint on alienation. The Restatement states that "promissory restraints" are valid only if "the restraint is qualified so as to permit alienation to some though not all possible alienees", and if "the restraint is reasonable under the circumstances." Restatement of Property, § 406 (1944). *See Crestview Ltd. v. Foremost Ins. Co.,* 621 S.W.2d 816, 825 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.).

Unlike *Sonny Arnold,* the contract in this case provides that "for a period of five years from the date hereof ... Grantor *will not sell, lease, exchange, assign, transfer, convey or otherwise dispose of all or any part of the Property* or any interest therein ... without the prior written consent of the Noteholder." (Emphasis added).

This constitutes a direct, contractual promissory restraint of alienation of the type prohibited by the Restatement of Property as announced by the majority in *Sonny Arnold.* The Supreme Court in *Sonny Arnold* further considered the question as to whether, viewed as a restraint operating by indirection, the provision could properly be classified as an invalid restraint. The court made the following points: (1) *The parties right to contract* as they see fit is important so long as the contract does not offend public policy and is not illegal. (2) *Express provisions* in the *Sonny Arnold* instrument allowed the lender to condition approval of a transfer on agreement to pay a higher rate of interest. (3) And the *manner* in which the lienholder enforced the clause was not itself unreasonable or arbitrary. Id., at 815–16.

In *Sonny Arnold,* Justice Spears, speaking for a strong concurring minority of four, approached the case from the standpoint that the use of the categories enunciated in section 404 of the Restatement of Property should not be conclusive, but that the court should consider whether the provision before it had not been demonstrated to be an unreasonable restraint upon the alienation of Arnold's property. The minority, therefore, reviewed the facts in the case; emphasized the provision there present that an increase in the rate of interest payable under the note could be required; rejected the contention that the only legitimate purpose for invoking a due on sale clause is protection of the lender's security interest; and emphasized the importance of the factor that the restraint was not exercised in an arbitrary or oppressive manner.

Viewed from either the principles held by the majority opinion or the factors deemed controlling by the minority, the present case is one which requires reversal of the summary judgment entered in favor of ap-

**38**

pellee. *See Metropolitan Savings & Loan Ass'n v. Nabours, supra.*

The absolute contractual prohibition that except for "Permitted Transfers" for a period of five years "Grantor *will not sell, lease, change, assign, transfer, convey, or otherwise dispose of all or any part of the Property or any interest therein ...,*" constitutes a direct prohibition of alienation and is clearly within the express provisions of the prohibition established by the Restatement of Property. Looking further into the matters deemed controlling by the concurring minority opinion in *Sonny Arnold,* the appellee here *coerced a fee of 5% of the unpaid balance,* arbitrarily, and without any provision in the original agreement providing for such fee. The *Arnold* majority, in this same vein, also pointed out that the Petitioner there did not contend that there was anything wrongful or improper in the manner in which the lender enforced the clause. Here, however, that is not the case. Because there was no specific provision for such a "waiver" fee, its imposition by the lender was coercive and by its nature a restraint on alienation of the property.

The arbitrary amount thus fixed *by appellee* in this case could just as easily have been 10% of the unpaid balance or 50% of the profit. No one suggests any social or economic value of the provision here in question except that of the parties being able to contract as they see fit. This is admittedly an important right, but its unfettered application under these circumstances would effectively destroy the rule prohibiting unreasonable restraints on alienation of property. This significant rule would then be only a skeleton of form lacking real substance.

We sustain appellant's single point of error complaining of the granting of appellee's motion for summary judgment. The judgment is reversed and the cause remanded for trial.