**PARKER PLAZA WEST PARTNERS, A Texas General Partnership, Plaintiff–Appellee,**

v.

**UNUM PENSION AND INSURANCE COMPANY, f/k/a Union Mutual Pension and Insurance Corporation, Defendant–Appellant.**

No. 90–1728.

United States Court of Appeals, Fifth Circuit.

Sept. 12, 1991.

Rehearing Denied Oct. 9, 1991.

Phillip E. Stano, Richard E. Barnsback, American Counsel of Life Ins., James C. Murray, Jr., Nina B. Matis, Katten, Muchin & Zavis, Washington, D.C., Mark L. Johnson, Barnett P. Ruttenberg, Chicago, Ill., for amicus curiae, American Council of Life Ins.

Sanford Svetcov, Janet E. Shestadov, Bruce W. Hyman, Landels, Ripley & Diamond, San Francisco, Cal., for defendant-appellant.

Charles R. Snakard, Kenneth W. Pearson, Morris Harrell, Locke, Purnell, Rain & Harrell, P.C., Dallas, Tex., for amicus curiae, Principal Mut. Life Ins. Co.

Steven E. Clark, James W. Morris, Jr., Goins, Underkoefler, Crawford & Langdon, Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, SMITH, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

In this Texas diversity action, UNUM Pension and Insurance Company appeals an adverse summary judgment. The district court held that UNUM, as lender, was

precluded, as a matter of law, from enforcing a contract provision for collection of a prepayment premium upon default and acceleration of its loan. The holding was based solely on the fact that the prepayment was involuntary on the part of the borrower. This is the limited issue before us. We REVERSE and REMAND.

## I.

In 1982, UNUM loaned Pearcy/Christon, Inc. $3.2 million, secured by real property (a shopping center) in Texas. Pearcy executed a promissory note, deed of trust and security agreement, including promising to pay interest at a rate of 16 percent per annum over the 128–month term of the loan. It sold the shopping center in 1983 to appellee Parker Plaza West Partners, with Parker assuming the note. A letter of credit was issued on behalf of Parker in favor of UNUM, to replace an earlier letter of credit provided by Pearcy.

UNUM consented in early 1985 to Parker's sale of a portion of the property, free and clear of its lien, and released the letter of credit. And later in 1985, Parker received UNUM's consent to sell the remainder to Plaza West Associates, with Parker providing mortgage financing to Plaza West for a portion of the purchase price. As a condition for its consent, UNUM required Parker to establish a standby letter of credit for $3,841,000 in favor of UNUM; and a Letter of Credit Agreement was entered into between UNUM and Parker. In 1986, the letter of credit was renewed and increased to $4,075,000.

In March 1987, Parker notified UNUM that on April 7, it would post the property for foreclosure, because of Plaza West's default, and that it anticipated that Plaza

West would initiate bankruptcy proceedings in an effort to avoid that foreclosure. Parker offered to prepay UNUM the principal and interest on the note, in return for UNUM's release of the standby letter of credit. On April 3, UNUM notified Parker that it considered the posting an event of default.[1]

UNUM received notice that Plaza West had filed for Chapter 11 bankruptcy on April 7. On April 30, UNUM notified Parker that the filing constituted an event of default. And, on May 12, UNUM notified Parker of continuing and additional defaults, including Plaza West's bankruptcy and Parker's failing to make the May 1 note payment and posting the property.

On June 9, Parker again proposed to pay the principal and interest on the note. However, on June 26, UNUM issued its notice of default and intent to accelerate. In the notice, it informed Parker of additional events of default, including unpaid late fees associated with the May 1 payment and unpaid, delinquent property taxes. UNUM gave Parker until July 6 to cure the default.

UNUM sent its acceleration letter to Parker on July 6, declaring $3,763,258.27 immediately due and payable. This amount included $2,769,336.28 in principal; $44,-309.38 in interest; unpaid late fees of $1,881.61; and a prepayment premium of $947,731.00. On August 14, 1987, UNUM drew $3,808,490.87, which included the prepayment premium, against the letter of credit. And later that month, it drew an additional $14,539.05 against the letter of credit, including interest accrued after July 6.

The prepayment premium constitutes the heart of the dispute.[2] Pursuant to para-

---

**1.** In its brief, UNUM states that it may have incorrectly listed the foreclosure as a default, because it had agreed in the Letter of Credit Agreement to allow a retransfer of the property to Parker on foreclosure. However, UNUM contends that it neither accelerated, nor drew on the standby letter of credit, based on the foreclosure notice. As discussed in note 4, *infra,* this may be one of the issues for the district court on remand.

**2.** The funds loaned under the note were from pension fund assets placed with UNUM under a guaranteed investment contract. Under such a contract, the lender promises a pension fund a fixed rate of return for fund assets placed with the lender, who then invests these funds through loans. UNUM required inclusion of the prepayment premium so that, in the event of default on the note, it would still earn the expected rate of return on its investment neces-

graph 7 of the note, Parker could not prepay the principal unless UNUM increased the interest rate.[3] That paragraph also provides for the prepayment premium and states in part:

> If the principal sum is prepaid on account of the acceleration of the maturity hereof by [UNUM], a premium shall be payable in respect thereof in an amount equal to the greater of (i) ten per centum (10%) of the principal sum prepaid or (ii) an amount, which ... would enable [UNUM] to obtain the same yield as this Note would yield [UNUM] if [UNUM] invested the principal sum prepaid in obligations of the United States Government....

Paragraph 9 gave UNUM the right to accelerate payment under certain circumstances:

> If [Parker] shall default in the payment hereunder when due or default in the performance of any of the terms, agreements, covenants or conditions contained in the Security Instruments then, or at any time thereafter, the entire principal of this Note, irrespective of the maturity date specified herein, together with the then accrued interest thereon and to the extent permitted by law, the prepayment premium shall, at the election of [UNUM], and without notice of such election, become immediately due and payable....

And, the Letter of Credit Agreement referenced the prepayment premium provision:

> In the event Parker has been given the proper notice as provided in the Deed of Trust, as to any default in its obligations of this Agreement, the Note, or Deed of Trust and such default is not timely cured, [UNUM] may accelerate the Note and the Letter of Credit may be drawn upon to effectuate a payoff in full in accordance with Paragraph 7 of the Note.

Parker filed suit against UNUM in August 1989, for recovery of the premium, alleging, *inter alia*, that it is an unenforceable penalty under Texas law. On cross-motions for summary judgment, the district court granted judgment in favor of Parker, framing the sole issue to be "whether Texas law allows the collection of prepayment premiums when prepayment is involuntary, that is, when prepayment is at the election of the holder of the Note under an acceleration clause." In holding that it did not, the district court relied on three cases: *Vela v. Shacklett*, 12 S.W.2d 1007 (Tex.Comm'n App.1929, judgm't aff'd); *F.O. Ketcham Mortgage Co. v. Walker*, 94 S.W.2d 806 (Tex.Civ.App.—Austin 1936, error refused); and *Texas Airfinance Corp. v. Lesikar*, 777 S.W.2d 559 (Tex.App.—Houston [14th Dist.] 1989, no writ). And in denying UNUM's motion for reconsideration, the district court distinguished the principal case on which UNUM relies, *Meisler v. Republic of Texas Savings Association*, 758 S.W.2d 878 (Tex.App.—Houston [14th Dist.] 1988, no writ).

## II.

We limit our review to the single issue addressed by the district court: whether the premium provision is unenforceable, as a matter of law, solely because it provides for a prepayment premium upon acceleration by the lender, rather than upon the borrower voluntarily making the prepayment.[4] Of course, in reviewing this "sum-

---

sary to meet its concomitant guaranteed obligation to the pension funds.

3. Paragraph 3 permitted UNUM to increase the interest rate in limited circumstances; and, if it did so, authorized the borrower to prepay the note "without premium".

4. Accordingly, we do not reach other issues presented here. UNUM asserts that the Letter of Credit Agreement constitutes an independent contract of guaranty, which precludes Parker from challenging collection of the premium. And, Parker contends that the note allowed ac-

celeration for defaults that are, *inter alia*, trivial, running afoul of Texas law concerning penalty provisions. (In any event, because these theories were not properly raised in the district court, we would otherwise decline to consider them on appeal. *Hudspeth v. United States*, 519 F.2d 1055, 1056 n. 1 (5th Cir.1975).) Furthermore, Parker contends that UNUM had no basis to accelerate the loan and collect the premium, asserting that UNUM breached the Letter of Credit Agreement. As noted, this point was not addressed by the district court. We remand for further proceedings.

mary judgment, we review the district court's actions de novo, applying the same standards used by the district court." *Texas Commerce Bank–Fort Worth v. United States*, 896 F.2d 152, 155 (5th Cir.1990) (citing *Degan v. Ford Motor Co.*, 869 F.2d 889, 892 (5th Cir.1989)); *see* Fed.R.Civ.P. 56. Needless to say, in diversity actions, we apply the law of the forum state. And in so doing, we "review de novo a district court's determination of state law." *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).[5]

Under Texas law, "[a] mortgage is governed by the rules which apply to interpretation of contracts." *Meisler*, 758 S.W.2d at 885 (citing *Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 633 S.W.2d 811, 815 (Tex. 1982)). Moreover, "[i]t is a basic contract principle that the parties have a right to contract with regard to their property as they deem appropriate, so long as the contract does not offend public policy and is not illegal." *Meisler*, 758 S.W.2d at 885 (citing *Sonny Arnold*, 633 S.W.2d at 815).

In Texas, "a contract against public policy is generally defined as a provision or stipulation which is illegal or which is inconsistent with or contrary to the best interest of the public." *Locomotive Eng'rs & Conductors Mut. Protective Ass'n v. Bush*, 576 S.W.2d 887, 890 (Tex.Civ.App.—Tyler 1979, no writ). "Expressions of public policy are found in a state's constitution, statutes and judicial decisions." *Id.* And in Texas, "[t]here is perhaps, no higher public policy of the state than to uphold contracts validly entered into and legally permissible in subject matter." *Mid–Continent Supply Co. v. Conway*, 240 S.W.2d 796, 804 (Tex.Civ.App.—Texarkana 1951, error refused). Contracts entered into "freely and voluntarily" are to be held "sacred", and courts "are not lightly to interfere with this freedom of contract." *Id.*

We find no Texas case holding that prepayment premiums are valid *only* where the borrower voluntarily prepays. And, it is well established that if a state's courts have not authoritatively decided an issue, we are *Erie*-bound to decide what they would hold if presented with it. *E.g., DiPascal v. New York Life Ins. Co.*, 749 F.2d 255, 260 (5th Cir.1985); *Arceneaux v. Texaco, Inc.*, 623 F.2d 924, 926 (5th Cir.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981).

Texas decisions on the validity of prepayment premiums divide generally into two scenarios: (1) where prepayment is at the borrower's option, and (2) where it results from the lender's acceleration of the loan on default. Cases involving a borrower's optional prepayment may arise in the context of a usury challenge to the lender's resulting assessment of a prepayment charge. Under Texas law, a borrower has no right to prepay a loan in the absence of the contract permitting it. *Ware v. Traveler's Indem. Co.*, 604 S.W.2d 400, 401 (Tex. Civ.App.—San Antonio 1980, writ ref'd n.r.e.). And where the borrower does have that right, Texas courts hold that a prepayment premium is a charge for the option or privilege of prepayment, not "compensation ... for the use or forbearance or detention of money" and, as such, the charge is not "interest." *Id.* (citing Tex.Rev.Civ. Stat.Ann. art. 5069–1.01(a) (Vernon 1971)); *Bearden v. Tarrant Sav. Ass'n*, 643 S.W.2d 247, 249 (Tex.App.—Ft. Worth 1982, writ ref'd n.r.e.); *Boyd v. Life Ins. Co. of the Southwest*, 546 S.W.2d 132, 133 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd). Therefore, as long as the prepayment premium "does not exceed the legal rate calculated to the stipulated maturity date," Texas courts do not consider such premiums usurious. *Bearden*, 643 S.W.2d at 249.

---

Obviously, our reversal removes any basis for Parker's request for attorney's fees on appeal.

**5.** *Salve Regina College* recently overruled our prior rule, by which we "customarily defer[red] to the district judge in a diversity case involving interpretation of the law of the state in which that judge sits". *USX Corp. v. Tanenbaum*, 868

F.2d 1455, 1457 (5th Cir.1989). Of course, we were " 'not bound by the district court's interpretation and [could] reverse the court if we believe[d] the court ha[d] incorrectly applied the state's law.' " *Id.* (quoting *Dean v. Dean*, 821 F.2d 279, 283 n. 4 (5th Cir.1987)).

The rationale for this rule is that because prepayment is at the borrower's option, the premium may be avoided by instead paying the note according to its terms. *Id.; Boyd*, 546 S.W.2d at 133. *Vela*, relied upon by the district court, falls within this rule. *See Ware*, 604 S.W.2d at 401. However, none of these cases examine prepayment premiums upon lender acceleration; nor do they hold that such premiums are valid *only* when prepayment is based on the voluntary choice of the borrower.

In Texas cases involving prepayment premiums upon lender acceleration, the premiums are typically challenged on public policy grounds as an unreasonable restraint on alienation. Such a challenge was upheld in *North Point Patio Offices Venture v. United Benefit Life Insurance Co.*, 672 S.W.2d 35 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), where the lender, in consideration for not accelerating a loan after violation of a due on sale clause, required the borrower to pay five percent of the unpaid loan balance. The court held that "[b]ecause there was no specific provision [in the original agreement] for such a 'waiver' fee, its imposition by the lender was coercive and by its nature a restraint on alienation of the property." *Id.* at 38. As noted, the court held the restraint to be unreasonable. *Id.*

Much earlier, in *F.O. Ketcham*, the borrower, under protest, in part paid a second note, representing unearned future interest on the principal note, upon a form of lender acceleration of the latter. 94 S.W.2d at 807. The second note had been executed shortly after the first and was held to be part of the same transaction. *Id.* at 807, 808. Apparently, the principal note did not provide for payment of a premium, on either borrower election to prepay or lender acceleration. The court held that the lender had no legal right to such payment. *Id.* at 809. It noted that because this was not "a voluntary prepayment of [the] debt before maturity", the above discussed *Vela* rule did not apply. However, it also noted that "[pre]payment of the principal debt would have abated or extinguished any right to future unearned interest on the principal, *absent any question ... of [a]*

*contract to the contrary." Id.* at 808 (emphasis added).

Here, the note provides for payment of a prepayment premium *upon borrower default* and lender acceleration. At the very least, both *North Point* and *F.O. Ketcham* suggest the validity, in principle, of a contract providing for a prepayment premium upon lender acceleration. Moreover, Texas courts have examined such provisions. In *Metropolitan Savings & Loan Association v. Nabours*, 652 S.W.2d 820 (Tex. App.—Tyler 1983, writ dism'd), the lender accelerated after transfer of the property without its consent. And, the deed of trust provided for a prepayment premium upon acceleration resulting from a transfer of the property without such consent. *Id.* at 821. The court ruled that a restraint on alienation "was created by an unambiguous clause prohibiting transfer without the consent of the [lender]. The restraint here compels the transferee of the [borrower] to renegotiate a loan with the [lender]." *Id.* at 822–23. It noted there were "no limits" on the terms to be exacted, or rewritten, through such negotiations, such as raising the interest rate, and that if such negotiations failed, and as a result the consent to transfer was not given, the borrower would "undoubtedly ... suffer acceleration of the debt and foreclosure of the lien against his property. Under this record the [borrower] would also be liable for the pre-payment penalty...." *Id.* at 823. Accordingly, based on the facts in issue, the court held the restraint on alienation to be unreasonable. *Id.*

After so holding, it took judicial notice of rising interest rates during the period in question and noted again

> that the clause at issue contained no specific provisions upon which the [lender's] power to renegotiate existed. As pointed out above, the requirement that [the lender] consent to the transfer meant that it was free to re-negotiate the terms of the deed of trust and other ancillary documents without limitation. *Deciding policy questions as here presented are difficult....*

*Id.* (emphasis added). The court did not, however, rule on whether the prepayment "penalty" was invalid because it could be assessed upon acceleration, rather than solely upon the borrower's election to prepay.

*Meisler* was the next Texas case to examine a prepayment premium upon lender acceleration. The deed of trust in *Meisler* provided that in the event the borrower violated the due on sale clause, the lender could, at its option, accelerate payment of the loan and collect a "prepayment penalty." 758 S.W.2d at 880. Among other things, the borrower contended that this was an unreasonable restraint on alienation. *Id.*

*Meisler* cited *North Point* and *Nabours* as examples of optional acceleration clauses, providing for a prepayment penalty, held to be unreasonable restraints on alienation and, as such, against public policy. *Id.* at 885. However, unlike the situations presented in those cases, the acceleration clause and prepayment provision in *Meisler* specifically defined the lender's re-negotiating power and limited the prepayment fee to an amount calculated within the terms of the note. *Id. Meisler* held that

the language of the clause in the deed of trust providing for a prepayment penalty is not an unreasonable restraint on alienation because the terms of such a penalty are specifically provided for in the deed of trust, and the agreed upon rights of the lender are expressly qualified by the requirement of reasonable conduct on the part of the lender.

*Id.*

The acceleration clause in *Meisler* provided that "if the note is accelerated, any tender by the grantor of an amount to satisfy the indebtedness *shall be considered a voluntary prepayment* and therefore, in order to satisfy the entire indebtedness due, the tender must include the prepayment penalty...." *Id.* at 884 (emphasis added). The holding in *Meisler*, however, is not grounded in this voluntary prepayment language. Indeed, the *Meisler* court emphasized that, upon violation of the due on sale clause, accelerating the

note and requiring payment of the prepayment premium was at the election of the lender, not the borrower. *Id.* No matter the "voluntary" label, therefore, prepayment was compelled by the lender's decision to accelerate and not by a voluntary decision by the borrower to prepay. Moreover, in Texas, "[l]abels put on particular charges are not controlling." *Gonzales County Sav. & Loan Ass'n v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976). In upholding the validity of a prepayment premium compelled by lender acceleration, not borrower election, *Meisler* is solid authority for prepayment premiums being enforceable in situations other than voluntary borrower prepayment.

However, the *Meisler* court decided *Lesikar* a year later, with both opinions written by the same judge. There, upon borrower default, the lender accelerated a loan and was judicially awarded a prepayment charge. *Lesikar* reversed that award, holding that

[a] prepayment charge on a promissory note is not compensation for the use of money. Rather, it is a charge to the borrower for the privilege of repaying the loan before maturity. Such a charge is not interest, and the demand for payment of it is not usurious [citing *Boyd*, 546 S.W.2d at 133.] However, when the holder has accelerated the note, the borrower has not availed himself of the privilege to repay early and should not be liable for a penalty associated with invoking that privilege. [The lender] was not entitled to the ... prepayment penalty and that portion of the judgment awarding such as damages is reversed.

777 S.W.2d at 563.

The court did not quote or describe the terms of the contract provision(s) involved. The note had resulted from a divorce decree award, by which the wife was awarded stock in the husband's business. As a result, they executed an agreement by which the wife sold that stock to the husband and took the note and a personal guarantee. Several years later, she sued the husband, alleging that payments on the note had ceased and claiming both default and accel-

eration. *Id.* at 561. As noted, she was awarded summary judgment and, among other relief, was awarded a "prepayment penalty." *Id.* at 561, 563.

As stated, the court did not reference a prepayment provision, if any, in the note, much less discuss one. However, in addressing whether the note was accelerated, the court stated that the

> note expressly provides for acceleration if, ten days after receipt of written notice of default, the default remains uncured. The note also provides for acceleration without notice.

*Id.* at 563. The court also discussed the wife's default notices, with the second providing that if the "past due amounts were not paid within ten days the note would be accelerated." *Id.* In that discussion, the court did not mention a concomitant prepayment fee being referenced in the notices; but, at that point in the opinion, it was only addressing acceleration *vel non.* *Id.*

Although the *Lesikar* court does not state whether the note included a prepayment charge provision (it does not appear that it did), *Lesikar* does not appear to address the issue before us; instead, it appears to fall within the line of Texas decisions, including *Boyd, Bearden,* and *Ware,* that allows lenders to assess a premium for the borrowers' voluntary exercise of a contractual prepayment privilege.[6] This conclusion is supported by the above

quoted reliance by the *Lesikar* court on *Boyd,* rather than on *North Point, Nabours,* or *Meisler.* Indeed, had *Lesikar* been intended, only a year later, to overrule *Meisler's* upholding a prepayment premium upon lender acceleration, the court would have said so.

Having reviewed the Texas decisions relating to the validity of prepayment premiums, we do not find prepayment premiums valid under Texas law *only* where the borrower voluntarily prepays the debt. Indeed, in *Meisler,* a prepayment premium compelled solely by lender acceleration was upheld where the relevant provisions in the deed of trust were "unambiguous, clear and unequivocal" and "specifically provided for" the terms of the premium. *Meisler,* 758 S.W.2d at 884, 885.

Alleged default is the triggering cause for the premium in issue. Parker has not asserted typical public policy challenges to prepayment premiums: usury or unreasonable restraint on alienation. As noted, Texas courts will not find contractual provisions to be violative of public policy unless they are "illegal ... or ... inconsistent with or contrary to the best interest of the public." *Locomotive Eng'rs,* 576 S.W.2d at 890. In this regard, the Texas Supreme Court's decision in *Sonny Arnold* is instructive. In evaluating a public policy challenge to an optional acceleration clause, the court stated:

---

**6.** In district court, UNUM attached to its reply to Parker's response to UNUM's summary judgment motion (1) the note at issue in *Lesikar* and (2) the appellate briefs filed by the parties in that action. UNUM did not submit the note and briefs by affidavit, nor were they certified. *See* Fed.R.Civ.P. 56(e). The record does not reflect that Parker objected; and, in any event, the district court considered the *Lesikar* note, including discussing it in its opinion. But even if the note had been properly submitted, we decline to use it in carrying out our *Erie* review of *Lesikar.* Instead, we have looked only to the *Lesikar* opinion. Such selective review of part of the evidence from another trial is obviously laden with possibilities for error. For example, what if there was an amendment to the *Lesikar* note, not included in this record? Moreover, as noted in *Salve Regina College,*

> *Erie* mandates that a federal court sitting in diversity apply the substantive law of the fo-

rum State, absent a federal statutory or constitutional directive to the contrary.... In decisions after *Erie,* this Court made clear that state law is to be determined in the same manner as a federal court resolves an evolving issue of federal law: "with the aid of such light as [is] afforded by the materials for decision at hand, and in accordance with the applicable principles for determining state law."

— U.S. at ——, 111 S.Ct. at 1218 (citations omitted; brackets in original). In this instance, for considering a state court opinion in seeking to determine state law, we question whether such "materials" include portions of the underlying evidence from the trial with which the opinion is concerned. *See, e.g., Browning Seed, Inc. v. Bayles,* 812 F.2d 999, 1002–03 (5th Cir. 1987); *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.1986) (en banc).

We find nothing inherently evil, unreasonable or oppressive in a lender conditioning approval of a transfer on the transferee's agreement to pay a greater rate of interest than that paid by his transferor. A valid business purpose is served by such a requirement.

633 S.W.2d at 815 (citations omitted).

And, although the opportunity was presented, *Meisler* did not hold that a contractual provision providing for a prepayment premium upon lender acceleration violated public policy, even though a public policy challenge was squarely before the court. In fact, *Meisler* cites *Sonny Arnold* for the proposition that acceleration clauses "serve a valid business purpose." *Meisler,* 758 S.W.2d at 885.[7] Therefore, we hold that Texas public policy is not violated solely because a prepayment premium results from lender acceleration.

### III.

The prepayment premium is to be paid upon lender acceleration, rather than upon the borrower's voluntary decision to prepay. We hold that this sole fact does not, as a matter of law, render the provision in issue unenforceable. Accordingly, the judgment is REVERSED and this action is REMANDED for further proceedings.

---

7. The purpose for the premium in issue is discussed in note 2 *supra.*