Cleo Mae **GROSECLOSE** and Sandra Groseclose Thornell, Appellants,

v.

Steven A. **RUM** and M. Carol **Rum**, Appellees.

No. 05–92–02572–CV.

Court of Appeals of Texas, Dallas.

July 1, 1993.

Robert L. Kelsoe, Dallas, for appellants.

Emily G. Tobolosky, Dallas, for appellees.

Before THOMAS, KINKEADE and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

This is a lawsuit for declaratory relief. Appellants appeal from the trial court's order, which prohibits them from enforcing a "no prepayment" clause on a real estate lien note. Appellants contend, in two points of error, that the trial court erred in granting appellees' motion for summary judgment because the note does not violate Article 5069–1.07(f) of the Revised Civil Statutes of Texas,[1] and appellees are estopped from claiming a right of prepayment. Appellants also complain, in a third point of error, that the trial court erred in awarding attorney's fees to appellees. We hold that a material fact issue exists about whether the note's interest rate violates article 5069–1.07(f). Accordingly, we

1. Tex.Rev.Civ.Stat.Ann. art. 5069–1.07(f) (Vernon 1987).

reverse the trial court's judgment and remand this cause for further proceedings.

Appellees purchased residential property from appellants in 1985. In connection with the sale, appellees executed a real estate lien note for the principal amount of $70,000. The note, which names appellants as payees, is secured by the property. The note provides for 240 monthly payments and an annual interest rate on the unpaid principal of 9.5 percent for the first year, 10 percent for the second year, 11 percent for the third year, 12 percent for the fourth year, and 12.5 percent thereafter. A clause in the note expressly states that the principal may not be prepaid prior to the date of maturity.

Appellees occupied the property as their residential homestead. A few years later, appellees contacted appellants and requested that the note be amended to allow its prepayment. Appellees sought to sell the property and retire the note. After appellants refused to amend the note, appellees filed this lawsuit for declaratory relief on December 3, 1991. Appellees' petition alleged that appellants could not prohibit prepayment because the rate of interest on the note exceeded the rate authorized by article 5069–1.07(f). The trial court granted appellees' motion for summary judgment.

 In reviewing a summary judgment record, we apply the following standards: (1) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the nonmovant as true; and (3) we indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A summary judgment proceeding seeks to eliminate patently unmeritorious claims and untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gul-*

*benkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The trial court's duty is to determine if there are any material fact issues to try, not to weigh the evidence or determine its credibility and try the case on affidavits. *Id.*

 Summary judgment is proper only if the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 413 (Tex.1989). To prevail on a summary judgment, a plaintiff must show its entitlement to summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of its cause of action as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

In their first point of error, appellants contend that the trial court erred in declaring that the note violates article 5069–1.07(f). Specifically, appellants argue that the interest rate on the loan does not exceed 12 percent. Appellants further argue that the "no prepayment" clause is not a prepayment charge or penalty that could be collected in violation of article 5069–1.07(f).

Article 5069–1.07(f) states that prepayment charges or penalties cannot be collected when interest rates exceed specified amounts:

> If a loan for property that is to be the residential homestead of the borrower is made at an interest rate that is greater than the rate prescribed by Subsection (d) of this Article, a prepayment charge or penalty may not be collected on the loan unless the charge or penalty is required by an agency created by federal law.

TEX.REV.CIV.STAT.ANN. art. 5069–1.07(f) (Vernon 1987). Subsection (d) provides for an interest rate of 12 percent per annum.[2] TEX.

---

**2.** The interest rate established by article 5069–1.07(d)(1) is the lesser of (1) twelve percent per annum or (2) the average per annum market

yield rate adjusted to constant maturities on ten-year United States Treasury Notes plus two percent per annum rounded off to the nearest quar-

REV.CIV.STAT.ANN. art. 5069–1.07(d)(1)(i) (Vernon 1987). Thus, in this case, article 5069–1.07(f) applies only if the note's interest rate is greater than 12 percent per annum.

Before we address the issue of the note's interest rate, we must consider whether a "no prepayment" clause is subject to article 5069–1.07(f). This question has not been decided by a Texas court. An opinion issued by the Consumer Credit Commissioner,[3] however, determined that "no prepayment" provisions in residential homestead loans should be interpreted as prepayment charges or penalties for the purposes of article 5069–1.07(f). Op. Tex. Consumer Credit Comm'r No. 83–1 (1983).

■ Appellants contend that the commissioner's opinion is faulty because there is a significant difference between a prepayment charge or penalty and a "no prepayment" provision. Appellants argue that "no prepayment" clauses are not penalties because they do not obstruct the borrower's rights. Under Texas law, unless the loan agreement provides otherwise, a borrower does not have the right to prepay a loan. *Parker Plaza W. Partners v. Unum Pension & Ins. Co.*, 941 F.2d 349, 352 (5th Cir.1991); *Ware v. Traveler's Indem. Co.*, 604 S.W.2d 400, 401 (Tex. Civ.App.—San Antonio 1980, writ ref'd n.r.e.). Thus, appellants assert that a "no prepayment" clause cannot be interpreted as a penalty because it merely restates the rights of the parties.

■ The Consumer Creditor Commissioner's opinion recognized that a "no prepayment" provision is not the ordinary type of prepayment charge or penalty which might be assessed or collected. Op. Tex. Consumer Credit Comm'r No. 83–1 (1983). But the commissioner concluded it would be inconsistent with the intent of article 5069–1.07(f) to rule that a provision which has the effect of precluding prepayment is not prohibited. *Id.* We agree with the commissioner's opinion. We hold that the legislative intent of article 5069–1.07(f) is to protect homeowners by al-

lowing them to prepay loans when they finance homes at high rates of interest. This intent would be frustrated if "no prepayment" clauses were enforced.

Because prohibiting prepayment is a penalty or charge, we must address how to determine the loan's interest rate under article 5069–1.07(f). Appellants contend that in order to calculate a loan's actual interest rate, all interest provided for must be spread over the term of the loan. Appellants claim the note's actual interest rate is less than 12 percent when the interest is spread. Appellees, on the other hand, assert there is no factual dispute that the note's rate of interest exceeds 12 percent because the note provided for an interest rate of 12.5 percent at the time this suit was filed.

The Texas Supreme Court has established that contracts are tested for usury by spreading the interest over the entire term of the contract. *Tanner Dev. Co. v. Ferguson,* 561 S.W.2d 777, 786 (Tex.1977). The term "spreading" is defined as a method of allocating the total interest provided for in a loan agreement over the full term of the loan. Frank A. St. Claire, *The Revised Texas Usury Ceilings—A New Alice in Wonderland,* 14 ST. MARY'S L.J. 187, 246 (1983). In *Tanner,* the supreme court held that when interest payments, over the whole term of the loan, do not exceed the amount authorized by law, usury penalties cannot be imposed merely because a loan's interest rate exceeds the statutory limit in any particular year. *Id.* at 787. Similarly, article 5069–1.07(a) expressly provides for spreading of interest to determine whether a loan secured by real property is usurious:

> On any loan or agreement to loan secured or to be secured, in whole or in part, by a lien, mortgage, security interest, or other interest in or with respect to any interest in real property, determination of the rate of interest for the purpose of determining whether the loan is usurious under all ap-

---

ter of one percent per annum. TEX.REV.CIV.STAT. ANN. art. 5069–1.07(d)(1) (Vernon 1987). Both sides agreed during oral argument that it is undisputed that the lesser of the two rates is twelve percent.

**3.** The Consumer Credit Commissioner is authorized to issue interpretations of article 5069. TEX.REV.CIV.STAT.ANN. art. 5069–2.02A(10) (Vernon Supp.1993).

plicable law shall be made by amortizing, prorating, allocating, and spreading, in equal parts during the full stated term of the loan, all interest at any time contracted for, charged, or received from the borrower in connection with the loan. TEX.REV.CIV.STAT.ANN. art. 5069–1.07(a) (Vernon 1987).

Appellees argue that spreading of interest is applied only in usury cases and that this is not a usury case. Appellees did not ask the trial court to declare that the note was usurious, nor did they seek usury penalties. Therefore, appellees maintain that article 5069–1.07(a) is not controlling in this case because the article's language specifically limits its applicability to usury claims.

■ "Usury" is defined as interest in excess of the amount allowed by law. TEX.REV. CIV.STAT.ANN. art. 5069–1.01(d) (Vernon 1987). The law, as set forth in article 5069–1.07(f), precludes prepayment charges and penalties if the rate of interest on a residential homestead loan exceeds a prescribed rate. Accordingly, in the case before us, we hold an interest rate greater than 12 percent would be usurious for the purposes of article 5069–1.07(f).

■ Appellees further urge us to liberally construe article 5069–1.07(f) because it applies to homesteads. They argue that to effectuate the article's purpose, it should be a violation of the article if a loan provided for an interest rate greater than the prescribed rate at any time during the term of the loan. Appellees, however, do not cite us to any statutory or case law authority that supports a determination of interest rates in the manner they propose. We hold that interest rates under article 5069–1.07(f) should be determined by spreading the interest over the entire term of the loan.

■ Therefore, for the appellees to be entitled to summary judgment, the interest rate had to exceed twelve percent over the life of the loan. Appellees showed that the loan exceeded twelve percent for fifteen years of its twenty-year term. In response to appellees' motion for summary judgment, appellants offered the affidavit of David Saddock, a certified public accountant. The Sad-dock affidavit states that the note's effective interest rate, calculated in accordance with generally accepted accounting principles, is less than 12 percent. Article 5069–1.07(a) does not expressly state how interest should be spread. In fact, because of article 5069–1.07(a)'s silence, numerous spreading methods to calculate interest rates have been suggested. *See* Frank A. St. Claire, *The "Spreading of Interest" Under the Actuarial Method*, 10 ST. MARY'S L.J. 753, 786–819 (1979). We hold that the Saddock affidavit raised a fact issue regarding the note's interest rate. Therefore, a genuine issue of material fact issue exists about whether the loan violates article 5069–1.07(f). We hold that the trial court erred in granting appellees' motion for summary judgment. Accordingly, we sustain appellants' first point of error.

Appellants' second and third points of error are "remand" points. Because we sustain appellants' first point of error, we need not address their other two points. We reverse the trial court's judgment and remand this cause for further proceedings in accordance with this opinion.

THOMAS, J., concurs in the disposition of this cause.