**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 94-60831
Summary Calendar

C.C. PORT, LTD., A TEXAS LIMITED PARTNERSHIP,
and WEIL PROPERTIES, INC.,

Plaintiffs-Appellants,

VERSUS

DAVIS-PENN MORTGAGE COMPANY,
FEDERAL NATIONAL MORTGAGE ASSOCIATION and FANNIE MAE,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(C-94-182)

(June 1, 1995)

Before REYNALDO G. GARZA, SMITH, and WIENER, CIRCUIT JUDGES.

REYNALDO G. GARZA, CIRCUIT JUDGE:[*]

This is a usury case. Before this Court is the issue of whether a prepayment penalty is usurious. For the reasons discussed below we affirm.

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

On August 22, 1991, Appellants C.C. Port, Ltd. and Weil Properties, Inc. (collectively, the "Borrower") executed the Multi-Family Note (Note) in the amount of $3,288,500.00 payable to Davis-Penn Mortgage Company (Davis-Penn). Davis-Penn promptly assigned the Note to the Federal National Mortgage Association (Fannie Mae).[1] The Note was secured by a Deed of Trust on the Kingston Port Apartments located in Corpus Christi, Texas and provided for an interest rate of 10.875 percent. The Note provided for a maturity of fifteen years, with repayment to take place in monthly installments:

> The principal and interest shall be payable . . . in consecutive monthly installments of THIRTY-ONE THOUSAND SIX AND 94/100 Dollars (U.S. $31,006.94) on the first day of each month beginning October 1, 1991, (herein "amortization commencement date"), until the entire indebtedness evidenced hereby is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on September 1, 2006.

The Note also provided that the Borrower may prepay the entire unpaid principal balance upon providing the Lender sixty days prior written notice and upon payment of a prepayment premium to be calculated by a formula provided in the Note.

The Borrower sought to prepay the entire unpaid principal. Upon request, the Lender calculated the prepayment premium on the unpaid principal balance to be $1,174,538.09. Unwilling to tender the prepayment premium, the Borrower filed suit on March 4, 1994 in the 94th Judicial District Court of Nueces County, Texas. On April

---

[1]Davis-Penn and Fannie Mae will be referred to collectively as the "Lender."

2

22, 1994, the Lender removed the case to the district court under 12 U.S.C. § 1723a(a) and Article III of the Constitution of the United States. On the 27th day of October, 1994, the district court granted the Lender's motion to dismiss.

## Discussion

This case was decided below upon motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court reviews <u>de novo</u> a district court's dismissal on the pleadings, accepting as true those well-pleaded factual allegations in the complaint. <u>Guichy v. Bank of LaPlace</u>, 954 F.2d 278, 281 (5th Cir. 1992). Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks, affirmance is in order. <u>Scheur v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Benton v. United States</u>, 960 F.2d 19, 21 (5th Cir. 1992).

The Borrower's sole basis for its usury claim is premised on the assertion that the prepayment premium is interest. Accordingly, we limit our review to this single issue. Interest is defined under Texas law as "compensation for the use, forbearance or detention of money." Tex. Rev. Civ. Stat. Ann. art. 5069-1.01 (Vernon 1987). The essential elements of a usury transaction are (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. <u>Nijarro v. Sasi Int'l, Ltd.</u>, 904 F.2d 1002, 1005 (5th Cir. 1990), <u>cert.</u>

3

denied, 498 U.S. 1048 (1991); Holey v. Watts, 629 S.W.2d 694, 696 (Tex. 1982).

Under Texas law, a borrower has no right to prepay a loan in the absence of a contract permitting it.[2] Parker Plaza West Partners v. Unum Pension & Ins. Co., 941 F.2d 349, 352 (5th Cir. 1991); Groseclose v. Rum, 860 S.W.2d 554, 557 (Tex.App.--Dallas 1993, no writ); Ware v. Traveler's Indem. Co., 604 S.W.2d 400, 401 (Tex.Civ.App.--San Antonio 1980, writ ref'd n.r.e.). Where the contract grants the borrower the right to prepay, a prepayment premium is not compensation for the use, forbearance, or detention of money, rather it is a charge for the option or privilege of prepayment. Parker Plaza, 941 F.2d at 352; Hettig & Co. v. Union Mut. Life Ins. Co., 781 F.2d 1141, 1145 (5th Cir. 1986); Bearden v. Tarrant Sav. Ass'n, 643 S.W.2d 247, 249 (Tex.App.--Fort Worth 1982, writ ref'd n.r.e.); Boyd v. Life Ins. Co. of the Southwest, 546 S.W.2d 132, 133 (Tex.Civ.App.--Houston [14th Dist.] 1977, writ ref'd). The rationale for this rule is that the borrower may avoid paying the prepayment premium by paying the note according to its terms.

The Borrower presents two arguments for the proposition that the prepayment premium is usurious interest. First, the Borrower contends that the Lender is not entitled to perfect tender in time

---

[2]This doctrine, which the Borrower conveniently labels the "perfect tender in time" rule, provides that "[a] debtor cannot, before the maturity of his debt, compel his creditor to accept payment, and a tender before maturity is without effect." Bell v. Mast, 7 S.W.2d 102, 104 (Tex.Civ.App.--Beaumont 1928, writ dism'd w.o.j.).

4

because the contract to accept payment over time is illusory. Second, the Borrower contends that the prepayment premium is usurious because it is involuntarily payable upon "act of Lender." We find both arguments to be meritless.

The Borrower focuses on a portion of a clause in the Note, contending that the contract to accept payment over time is illusory. The clause provides, in full, as follows:

> From time to time, without affecting the obligation of the undersigned or the successors or assigns of the undersigned to pay the outstanding principal balance of this Note and observe the covenants of the undersigned contained herein, without affecting the guaranty of any person, corporation, partnership or other entity for payment of the outstanding principal balance of this Note, without giving notice to or obtaining the consent of the undersigned, the successors or assigns of the undersigned or guarantors and without liability on the part of the holder hereof, the holder thereof may, at the option of the holder hereof, extend the time for payment of said outstanding principal balance or any part thereof, reduce the payments thereon, extend the time for payment of said outstanding principal balance or any part thereof, reduce the payments thereon, release anyone liable on any of said outstanding principal balance, accept a renewal of this Note, modify the terms and time of payment of said outstanding principal balance, join in extension or subordination agreement, release any security given herefor, take or release other or additional security, and agree in writing with the undersigned to modify the rate of interest or period of amortization of this Note or change the amount of the monthly installments payable hereunder.

The Borrower contends that the language "without giving notice or obtaining the consent of the undersigned . . . the holder hereof may . . . modify the terms and time of payment of said outstanding

5

principal balance. . ." gives the Lender the right to modify the time and terms of payment. Using terms such as "absolute right to modify," "absolute control over the time and terms of payment," the "untrammelled right to modify the time and terms of repayment," "the right to modify the repayment terms of the note at will" "absolute discretion in modifying the terms of repayment," and "the right unconditionally to modify the time and terms of repayment," the Borrower likens the Note to a demand note -- the Borrower contends that the repayment provisions are illusory because the Lender can alter the time and manner of payment. The Borrower's illusory argument can be summarized in the following syllogism: because the Lender can alter the time and manner of payment, the Lender retains no right to demand perfect tender in time; because the Lender cannot demand perfect tender in time, a prepayment premium is not consideration for giving up this right and is therefore interest.

We disagree. First, the Borrower cites no federal or Texas authority in support of its proposition that a prepayment premium is usurious in a situation even remotely similar to the case <u>sub judice</u>. Second, the Borrower mischaracterizes the language of the Note. "A mortgage is governed by the rules which apply to interpretation of contracts. <u>Parker Plaza</u>, 941 F.2d at 352 (quoting <u>Meisler v. Republic of Texas Saving Assoc.</u>, 758 S.W.2d 878, 885 (Tex.App.--Houston [14th Dist.] 1988, no writ)). Courts, in construing a contract, review the entire agreement in order to determine its meaning; courts should not consider a single

provision in isolation.  Tennessee Gas Pipeline Co. v. F.E.R.C., 17 F.3d 98, 102 (5th Cir. 1994).  Moreover, under Texas law, there is a specific presumption against a finding of a usurious interest. Federal Deposit Ins. Corp. v. Claycomb, 945 F.2d 853, 860 (5th Cir. 1991), cert. denied, 112 S.Ct. 2301 (1992).  "In construing the loan documents, we must ascertain and give effect to the objective intention of the parties as expressed in the written instruments. . . .  We must presume that the parties intended to obey the law unless the contrary plainly appears."  Woodcrest Ass'n, Ltd. v. Commonwealth Mtg. Corp., 775 S.W.2d 434, 438 (Tex.App.--Dallas 1989, writ denied).  Therefore, applying the same standard as the court below, we must look at the contract as a whole and presume that the parties intended to obey the law.

Contrary to the Borrower's assertions, the Lender may not demand payment before the due date.  Neither the language of the Note nor the law contemplates such an interpretation.  When the clause is read in its entirety and in context to the other provisions in the Note it becomes apparent that the Note is payable at a definite time.  The clause, of which the Borrower quotes only selected portions, insures that persons such as guarantors or general partners of the Borrower are not released in the event payment terms are extended, payments are reduced, or collateral released.  The clause was placed in the Note to allow the Lender some flexibility in dealing with a borrower who cannot make payments or requests that certain collateral be released.  The benefit of this clause flows to the Borrower.  If this clause were

7

redacted from the Note the Lender would be unable to extend the time for payment, resulting in a default, acceleration, and foreclosure when the Borrower falls on bad times. We recognize the commercial realities of this situation and refuse to construe the Note in such a way as to do injustice to the parties' intentions.[3] Furthermore, the last portion of the clause states clearly that in order to modify the rate of interest or the period of amortization or change the amount of the monthly installments, the Lender must obtain the undersigned's written agreement.[4] Lastly, the terms of the Note support the Lender's construction and our interpretation. The Note states that it is for a term of fifteen years and provides for acceleration of the principal and interest only upon default. Reading the clause in its entirety and in context to the other provisions of the Note reveals clearly the intentions of the parties and the futility of the Borrower's position.

The Borrower's argument that a prepayment premium due upon "act of Lender" somehow converts the premium into interest is similarly without merit. The Lender has taken no "action" whatsoever. Therefore, this issue is not before this Court.[5] The

_____

[3]Relevant to this analysis is the scenario of the Lender attempting to construe this language as empowering it to demand payment or change the terms of payment in such a way as to harm the Borrower. If that were the case, we would be unable to entertain such a construction.

[4]The portion provides: "and agree in writing with the undersigned to modify the rate of interest or period of amortization of this Note or change the amount of the monthly installments payable hereunder."

[5]This Court, under facts properly raising this issue, rejected this argument in Parker Plaza, 941 F.2d at 352.

8

decision of the court below is AFFIRMED.