# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

February 11, 2011

No. 10-50588
Summary Calendar

Lyle W. Cayce
Clerk

AMK 2000-A, L.L.C.,

Plaintiff-Appellee

v.

AMINA MALIEK, an Individual; AMIRALI MAVANI, an Individual;
DOLLAR VALUE, INCORPORATED, a Texas Corporation;
M & V COMPANY, INCORPORATED, a Texas Corporation,

Defendants-Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-825

Before JONES, Chief Judge, and JOLLY and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Amina Maliek, Amirali Mavani, Dollar Value, Inc., and M&V Company, Inc. ("Appellants"), executed a guaranty in favor of U.S. Bank National Association ("U.S. Bank")[1] as part of a commercial loan transaction. After the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] U.S. Bank National Association was the trustee for the Registered Holders of FMAC Loan Receivables Trust 2000-A, a special purpose business trust organized and existing under Delaware law, the lender in this case. On October 8, 2010, U.S. Bank National Association

No. 10-50588

original borrower defaulted, Appellants became liable for all amounts due under the loan agreement. The district court awarded U.S. Bank $2,215,870.07 in damages, which included a contractual prepayment penalty totaling $754,656.59. Appellants only challenge the award of the prepayment penalty on appeal, arguing it constitutes an unenforceable penalty. We affirm.

**I.**

Appellants executed a loan guaranty under which they personally guaranteed the full payment of all obligations arising under a commercial loan agreement between AMK Enterprises, LLC ("AMK"), the borrower, and U.S. Bank. The original loan amount guaranteed by Appellants was $1,250,000, with interest at 9.5% per annum. After AMK defaulted on the loan, U.S. Bank sought payment from Appellants and eventually initiated this diversity action for breach of contract when Appellants failed to make any payment to U.S. Bank.

On March 18, 2010, the district court granted U.S. Bank's motion for partial summary judgment on liability, finding Appellants liable for breach of the guaranty. On April 7, 2010, U.S. Bank then filed a motion for partial summary judgment on damages. U.S. Bank sought $2,215,870.07, which included all amounts provided for under the loan agreement. Of this sum, Appellants disputed only the "Defeasance Amount," which totaled $754,656.59 and which Appellants argued was an unenforceable penalty. They first raised this affirmative defense, however, in their response to U.S. Bank's motion for summary judgment on damages. Apparently recognizing their failure to plead it earlier, Appellants also filed a motion for leave to amend their answer to include this defense.

---

transferred its interest in the judgment and the guaranty to AMK 2000-A LLC, making it the real party in interest. For ease of reference, however, we will continue to refer to "U.S. Bank" in this appeal.

No. 10-50588

On May 12, 2010, the district court denied Appellants' motion for leave to amend and granted U.S. Bank's damages motion, concluding that Appellants' defense was not supported by the relevant authority and thus that amendment would be futile. The district court then entered a judgment against Appellants for $2,215,870.07, plus post-judgment interest.

On appeal, Appellants argue that the Defeasance Amount is an unenforceable penalty, and that the district court erred in denying their motion for leave to amend. Because we conclude that the Defeasance Amount is not an unenforceable penalty, we affirm the judgment of the district court.

**II.**

According to the promissory note, the borrower could not prepay the loan unless the borrower also paid a "Defeasance Amount," which would be determined according to a pre-arranged formula.[2] The promissory note provided that the Defeasance Amount would be due not only in the case of voluntary prepayment, but also in the event of acceleration due to default.[3] Consequently, Appellants became liable for that fee once AMK defaulted on the loan. U.S. Bank claimed that the Defeasance Amount following AMK's default totaled

---

[2] Section 2.5.2 of the promissory note stated, "The Defeasance Amount shall be the amount which, when added to the [outstanding] Principal Amount of the Note . . . is sufficient to purchase direct, non-callable obligations of the United States of America (the "U.S. Obligations") that provide for payments prior . . . to the due date for each Regular Monthly Payment Amount or principal payment through and including the Maturity Date, with each such payment being equal to or greater than (1) the Regular Monthly Payment Amount and (2) with respect to the payment due on the Maturity Date, the entire outstanding Principal Amount of this Note together with any interest accrued as of such date and all other amounts payable pursuant to the Loan Documents. The Defeasance Amount shall include an amount sufficient to pay all costs, charges and expenses incurred or to be incurred in connection with the purchase of the U.S. Obligations."

[3] Section 2.5.3 provides, "The Defeasance Amount shall apply not only in the case of voluntary prepayment, but also in the event that this Note becomes due and payable in full in the event of acceleration by reason of the occurrence of a Default Event or otherwise."

No. 10-50588

$754,656.59, which the court awarded.[4]  Appellants argue on appeal that this amount is "excessive and unreasonable and shocking," and that the fee should thus be construed as an "unenforceable penalty" under Texas law.[5]  Appellants are mistaken.

"Under Texas law, a borrower has no right to prepay a loan in the absence of the contract permitting it."  *Parker Plaza W. Partners v. UNUM Pension & Ins. Co.*, 941 F.2d 349, 352 (5th Cir. 1991); *Groseclose v. Rum*, 860 S.W.2d 554, 557 (Tex. App. 1993) (same).  Here, the promissory note provided AMK the right to prepay the loan conditioned upon payment of what essentially amounts to a prepayment penalty.  *See* 13 TEX. JUR. 3D *Consumer & Borrower Protection* § 56 (2010) ("A prepayment penalty is a payment or consideration for the option or privilege of paying off a loan early.").  Such penalties are explicitly authorized by Texas statute and are valid "whether payable in the event of voluntary prepayment, involuntary prepayment, acceleration of maturity, or other cause that involves premature termination of the loan."  *See* TEX. FIN. CODE ANN. § 306.005 (West 2006); *see also Parker Plaza*, 941 F.2d at 356 ("Texas public policy is not violated solely because a prepayment premium results from lender acceleration.").

---

[4]  The Appellants object to the affidavit upon which this figure is based.  They claim that the affidavit is "conclusionary [sic]" and provides "no explanation as to the reasoning or methodology explaining how the purported [Defeasance Amount] was calculated."  While we agree the affidavit provides no explanation as to how it arrived at the Defeasance Amount, the Appellants never submitted proof–or even claim–that the total is incorrect.  In fact, Section 2.5.4 of the Note provides that the Lender's determination of the Defeasance Amount is "binding and conclusive" on the parties "[a]bsent material and manifest error."  Consequently, once U.S. Bank submitted the affidavit in question, the burden shifted to the Appellants to provide competent summary judgment evidence establishing the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986).  Since they provided no such evidence, we accept U.S. Bank's assertion that the Defeasance Amount equals $754,656.59.

[5]  The parties agree Texas substantive law governs this diversity suit.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938).

No. 10-50588

Importantly, Texas law does not state that agreed-upon prepayment penalties are subject to a "reasonableness" test. *See, e.g.*, TEX. FIN. CODE ANN. § 306.005 ("A creditor and an obligor may agree to a prepayment premium, make-whole premium, or similar fee or charge."); *Bearden v. Tarrant Sav. Ass'n*, 643 S.W.2d 247, 249 (Tex. App. 1982) (finding, under Texas law, no requirement for prepayment penalty to be reasonable). Nor do we find evidence that Texas courts apply the rules governing liquidated damages clauses to invalidate prepayment penalties under commercial loan agreements. Consequently, Appellants' challenge to the prepayment penalty is meritless.[6]

The district court thus properly denied Appellants' motion to amend because amendment would have been futile. *See Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 321 (5th Cir. 1991). The court also correctly calculated damages to include the Defeasance Amount.

AFFIRMED.

---

[6] Appellants briefly mention in their brief that the Defeasance Amount "far exceed[s] a legal interest rate." While this suggests that Appellants challenge the Defeasance Amount also on grounds of usury, the brief does not mention usury in either its statement of issues or its summary of argument, nor does the brief cite authority on the subject. In fact, the summary of argument adverts only to the argument that the Defeasance Amount "constitute[s] an unenforceable penalty." Consequently, any usury arguments have been waived on appeal, and thus do not consider them. *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it on appeal.") (internal quotation marks and citation omitted).